Edward A. Pennington (D.C. Bar No. 422006) (admitted *pro hac vice*)
  epennington@sgrlaw.com
John P. Moy (D.C. Bar No. 466908) (admitted *pro hac vice*)
  jmoy@sgrlaw.com
Sean T.C. Phelan (D.C. Bar No. 997681) (admitted *pro hac vice*)
  sphelan@sgrlaw.com
Jennifer L. Feldman (D.C. Bar No. 1013263) (admitted *pro hac vice*)
  jfeldman@sgrlaw.com
John P. Pennington (D.C. Bar No. 1018204) (admitted *pro hac vice*)
  jpennington@sgrlaw.com
**SMITH, GAMBRELL & RUSSELL, LLP**
1055 Thomas Jefferson Street, N.W., Suite 400
Washington, D.C. 20007
Telephone: 202.263.4300
Facsimile: 202.263.4329

Michael L. Kirby (SBN 50895)
  mike@kirbyandkirbylaw.com
Heather W. Schallhorn (SBN 299670)
  heather@kirbyandkirbylaw.com
**KIRBY & KIRBY LLP**
501 West Broadway, Suite 1720
San Diego, California 92101
Telephone: 619.487.1500
Facsimile: 619.501.5733

**Attorneys for Plaintiff InfoGation Corp.**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| INFOGATION CORP., | Case No.:  3:16-cv-01902-H-JLB |
| Plaintiff, | **INFOGATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STAY** |
| v. | |
| HTC CORPORATION and HTC AMERICA, INC., | |
| Defendants. | |

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND...................................................................1

    A.  The Parties .................................................................................1

    B.  Procedural History in the Three Related Cases Before this Court.................2

    C.  Google, Inc.'s Declaratory Judgment Action in the Northern District of California................................................4

III.  LEGAL STANDARD ...........................................................................5

IV.  ARGUMENT ........................................................................................6

    A.  InfoGation Will Suffer Harm If the Court Grants a Stay..............................6

    B.  Defendants Will Not Suffer Hardship Or Inequity If Required to Proceed in This Litigation. ................................8

    C.  A Stay Would Prohibit the Orderly Course of Justice. ..................................9

        1.  The Declaratory Judgment Complaint filed by Google is unlikely to proceed....................................9

            a.  The Northern District lacks subject matter jurisdiction over the Declaratory Judgment Complaint...............9

            b.  The Northern District should dismiss the Northern District Action under the "first-to-file" rule..........................11

        2.  The Northern District Action would not be dispositive of this case and the "customer-suit" exception does not apply.....................13

        3.  InfoGation's claims against Defendants involve a different measure of damages. ................................16

V.  CONCLUSION.......................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Adobe Sys. Inc. v. Kelora Sys. LLC*,
 No. C 11-3938 CW,
 2011 WL 6101545 (N.D. Cal. Dec.7, 2011) ...................................................16

*Adobe Sys. Inc. v. Select Retrieval, LLC*,
 No. 3:12-CV-2342-GPC-WMC,
 2014 WL 497441 (S.D. Cal. Feb. 6, 2014) .....................................................16

*Alltrade, Inc. v. Uniwield Prods., Inc.*,
 946 F.2d 622 (9th Cir. 1991) ...........................................................................11

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
 No. 13-17131,
 2016 WL 4578362 (9th Cir. Sept. 2, 2016) .....................................................11

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
 No. 06-0715-SC,
 2012 WL 3757486 (N.D. Cal. July 5, 2012) ....................................................11

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
 1 F.3d 1214 (Fed. Cir. 1993) ............................................................................17

*Church of Scientology v. United States Dep't of the Army*,
 611 F.2d 738 (9th Cir. 1979)............................................................................11

*Cisco Sys. v. TiVo, Inc.*,
 No. C 12-02766 RS,
 2012 WL 3279532 (N.D. Cal. Aug. 10, 2012) ...........................................11, 12

*Clinton v. Jones*,
 520 U.S. 681 (1997) ...........................................................................................5

*CMAX, Inc. Hall*,
 300 F.2d 265 (9th Cir. 1962).............................................................................6

*Contentguard Holdings, Inc. v. Google, Inc.*,
 No. 2:13-CV-01112-JRG,
 2014 WL 1477670 (E.D. Tex. Apr. 15, 2014) .................................................14

*Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*,
 246 F.3d 1336 (Fed. Cir. 2001)........................................................................17

*Deere & Co. v. Int'l Harvester Co.*,
 710 F.2d 1551 (Fed. Cir. 1983)........................................................................18

*Ericsson, Inc. v. Harris Corp.*,
 352 F.3d 1369 (Fed. Cir. 2003)........................................................................17

*FormFactor, Inc. v. Micronics Japan Co.*,
 No. CV-06-07159 JSW,
 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) .....................................................8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)...............................................17, 18

*Google Inc. v. Creative Labs, Inc.*,
    No. 16-CV-02628-JST,
    2016 WL 6947564 (N.D. Cal. Nov. 28, 2016) .................................8

*Grain Processing Corp. v. Am. Maize–Prods. Co.*,
    185 F.3d 1341 (Fed. Cir. 1999)......................................................17

*Interactive Fitness Holdings, LLC v. ICON Health & Fitness, Inc.*,
    No. 10-CV-04628-LHK,
    2011 WL 1302633 (N.D. Cal. Apr. 5, 2011) .................................11

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
    544 F. Supp. 2d 949 (N.D. Cal. 2008) .....................................12, 13

*Kahn v. Gen. Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989).............................................6, 7, 13

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990)......................................................13

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
    787 F.3d 1237 (9th Cir. 2015) .......................................................12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)............10

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ...............................................................5, 6, 8

*LG Elecs., Inc. v. Eastman Kodak Co.*,
    No. 09-CV-0344H (BLM),
    2009 WL 1468703 (S.D. Cal. May 26, 2009)..............................5, 6

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) .....................................................6, 8

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ......................................................................10

*Pacesetter Sys, Inc. v. Medtronic, Inc.*
    678 F.2d 93 (9th Cir. 1982)............................................................11

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
    No. 5:11-CV-02288-LHK,
    2011 WL 4915847 (N.D. Cal. Oct. 17, 2011) ...................10, 12, 13

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir.),
    cert. denied, 516 U.S. 867 (1995) .................................................17

*Select Retrieval, LLC v. L.L. Bean, Inc.*,
    No. 2:12-CV-00003-NT,
    2013 WL 1099754 (D. Me. Mar. 15, 2013)..............................15, 16

**INFOGATION'S MEMORANDUM OF**
**POINTS AND AUTHORITIES IN**
**OPPOSITION TO DEFENDANTS'**
**MOTION TO STAY**

- iii -

**16cv1902**

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011) ............................................................................6

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006) ..........................................................................14

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ............................................................................................11

**<u>Statutes</u>**

28 U.S.C. § 2201 ......................................................................................................10

**INFOGATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS'
MOTION TO STAY**
    - iv -
    **16cv1902**

Pursuant to Civil Local Rules 7.1.e.1 and 7.1.f.3, Plaintiff InfoGation Corp. ("InfoGation") hereby submits its opposition ("Opposition") to Defendants HTC Corporation and HTC America, Inc.'s Motion to Stay ("Defendants' Motion to Stay").

## I.    INTRODUCTION

A full trial on the merits of this case will be completed in less than a year. Yet, Defendants ask this Court to delay the prosecution of InfoGation's case by approximately 22 months in deference to a later-filed declaratory judgment action filed by Google in the Northern District of California. The length of the delay alone prohibits the orderly course of justice and should result in denial of Defendants' request. Moreover, such relief is manifestly inappropriate because: 1) the stay will harm InfoGation; 2) Defendants will not suffer hardship by proceeding with this case; and 3) the Northern District Action should be dismissed, and, even if it proceeds will not resolve major issues that must be litigated in this case.

## II.   FACTUAL BACKGROUND

### A.    The Parties

InfoGation is a practicing entity based in San Diego, California. (Dkt. No. 1 in Case No. 3:16-cv-01901; Dkt. No. 1 in Case No. 3:16-cv-01902; and Dkt. No. 1 in Case No. 3:16-cv-01903 (collectively, "Complaints"), at ¶¶ 2, 12; *see also* Declaration of Dr. Kent Qing Pu ("K.Q.P. Decl.") at ¶3). InfoGation produces vehicle-based turn-by-turn driving directions with accurate voice guidance, real-time travel content, and communications integration solutions for the automotive, trucking, commercial fleet and consumer industries. (Complaints at ¶12; *see also* K.Q.P. Decl.) at ¶4). The President, CEO, and Founder of InfoGation, Dr. Kent Qing Pu, along with Dr. Hui Henry Li, developed the invention embodied in U.S. Patent No. 6,292,743 ("the '743 patent"). (Complaints at ¶13; *see also* K.Q.P. Decl.) at ¶¶1, 2).

InfoGation has accused the following smartphone manufacturers of infringing the '743 patent:  ZTE (USA), Inc., HTC Corporation and HTC America, Inc., Huawei

Technologies Co., Ltd., Huawei Devices USA, Inc. (collectively, "Defendants"). (Complaints at ¶14). Defendants design, manufacture, distribute, and sell smartphones and other devices in the United States. (Defendants' Motion to Stay, Dkt. No. 30 in Case No. 3:16-cv-01901-H-JLB, at 2; Dkt. No. 38 in Case No. 3:16-cv-01902, at 2; and Dkt. No. 30 in Case No. 3:16-cv-01903-H-JLB (collectively, "Defendants' Motion to Stay") at 2).[1]

### B.      Procedural History in the Three Related Cases Before this Court

On July 27, 2016, InfoGation filed complaints for patent infringement against Defendants in this Court, which is InfoGation's home forum. (Complaints at ¶¶1, 2). InfoGation accused Defendants of infringing one claim, claim 15, of the '743 patent. Because the three cases involve the same patent, the same claim of patent infringement, and the same plaintiff (InfoGation), the cases are "related." CivLR 40.1(g). Pursuant to the Court's "Low-Number" Rule, on August 5, 2016, the Court transferred two of the cases (Case Nos. 3:16-cv-01902 and 3:16-cv-01903) from their previously assigned judges, so that the Honorable District Judge Huff and the Honorable Magistrate Judge Burkhardt will preside over all three related cases. (Dkt. No. 15 in Case No. 3:16-cv-01902; and Dkt. No. 15 in Case No. 3:16-cv-01903).

On November 1, 2016, after an extension of time to respond to the Complaints, Defendants each filed an answer, and HTC Corporation; HTC America, Inc.; and ZTE (USA), Inc. also filed counterclaims. (Dkt. No. 22 in Case No. 3:16-cv-01901; Dkt. No. 21 in Case No. 3:16-cv-01902; and Dkt. No. 22 in Case No. 3:16-cv-01903) (collectively, "Answers"). Shortly afterward, the Court scheduled a telephonic case management conference and ordered the parties to jointly submit any changes to the Court's proposed scheduling order. (Dkt. No. 24 in Case No. 3:16-cv-01901; Dkt. No. 26 in Case No. 3:16-

---

[1]  InfoGation will cite to Defendants' Motion to Stay as one document, though substantively identical documents were filed in each of the three related cases. *See* Motion to Stay, at 1 n.1 (stating that Defendants were filing "substantively identical briefs").

cv-01902; and Dkt. No. 23 in Case No. 3:16-cv-01903). The parties jointly submitted requested changes to the proposed scheduling order on November 14, 2016. (Dkt. No. 26 in Case No. 3:16-cv-01901; Dkt. No. 31 in Case No. 3:16-cv-01902; and Dkt. No. 25 in Case No. 3:16-cv-01903).

Judge Huff held a telephonic case management conference with InfoGation and Defendants on November 18, 2016. (Dkt. No. 28 in Case No. 3:16-cv-01901; Dkt. No.36 in Case No. 3:16-cv-01902; and Dkt. No. 27 in Case No. 3:16-cv-01903). During this conference, when Huawei's counsel stated that Defendants intended to file motions to stay these cases pending the disposition of the Google's declaratory judgment action in the Northern District, Judge Huff noted that "the Court will consider the applicable standards, but generally I wouldn't be staying a case pending another case. We could go to trial with this schedule probably quite quickly. The Northern District is down several judges, as you know." (Nov. 18, 2016 Telephonic Case Management Conference Tr. at 4).

Following the case management conference, Judge Huff entered a scheduling order adopting the parties' requested changes, with fact discovery closing June 30, 2017, and trial commencing December 5, 2017. (Dkt. No. 31 in Case No. 3:16-cv-01901; Dkt. No.39 in Case No. 3:16-cv-01902; and Dkt. No. 31 in Case No. 3:16-cv-01903 at ¶¶ 17, 33) ("Scheduling Order"). Pursuant to the Scheduling Order, InfoGation served its infringement contentions on Defendants on December 2, 2016. (Scheduling Order at ¶1). The deadline for Defendants to serve invalidity contentions is January 27, 2017. (Scheduling Order at ¶4).

In addition, the parties in have moved forward with Alternative Dispute Resolution. Magistrate Judge Burkhardt held a telephonic status conference with all parties on November 18, 2016. (Dkt. No. 29 in Case No. 3:16-cv-01901; Dkt. No.37 in Case No. 3:16-cv-01902; and Dkt. No. 28 in Case No. 3:16-cv-01903). Pursuant to that status conference, the parties jointly filed motions to continue the Early Neutral

1   Evaluation (ENE), so the parties may first exchange infringement and invalidity

2   contentions. (Dkt. No. 33 in Case No. 3:16-cv-01901; Dkt. No.41 in Case No. 3:16-cv-

3   01902; and Dkt. No. 33 in Case No. 3:16-cv-01903). The Court granted these motions on

4   November 30, 2016, and set the ENE conference for February 9, 2017. (Order Granting

5   Joint Motion to Continue ENE, Dkt. No. 35 in Case No. 3:16-cv-01901; Dkt. No.42 in

6   Case No. 3:16-cv-01902; and Dkt. No. 34 in Case No. 3:16-cv-01903).

7       **C.**    **Google, Inc.'s Declaratory Judgment Action in the Northern District of**
8              **California**

9         Over two months after InfoGation filed the Complaints in this Court, on October 7,

10   2016, Google, Inc. ("Google") filed a complaint in the Northern District of California

11   against InfoGation for declaratory judgment of non-infringement of the '743 patent

12   ("Declaratory Judgment Complaint"). (Ex. A, Google's Complaint for Declaratory

13   Judgment of Non-Infringement, *Google Inc. v. InfoGation Corp.*, No. 3:16-cv-05821,

14   Dkt. No. 1). Google premised its Declaratory Judgment Complaint on the fact that

15   InfoGation had filed the three Complaints in this Court against "Google's partners." (*Id.*

16   at 1).

17         InfoGation filed a motion to dismiss the Declaratory Judgment Complaint for lack

18   of subject matter jurisdiction on November 9, 2016 ("Motion to Dismiss"). (Ex. B,

19   InfoGation's Motion to Dismiss for Lack of Jurisdiction, No. 3:16-cv-05821, Dkt. No.

20   15). In its Motion to Dismiss, InfoGation asserted that no subject matter jurisdiction

21   exists for Google's action because InfoGation has not directed any affirmative act at

22   Google, and even if subject matter jurisdiction was found to exist, the Northern District

23   should dismiss the action under the first-to-file rule of federal comity. (*Id.* at 1).

24         Google filed an opposition to the Motion to Dismiss on November 30, 2016

25   ("Opposition"). (Ex. C, Google's Opposition to InfoGation's Motion to Dismiss, No.

26   3:16-cv-05821, Dkt. No. 22). In its Opposition, Google argued, as Defendants argue in

27   their Motion to Stay, that the customer-suit exception to the first-to-file rule should apply,

28

allowing Google's declaratory judgment action ("Northern District Action") to proceed before InfoGation's first-filed Complaints. (*Id.* at 1).

InfoGation filed a Reply in support of its Motion to Dismiss on December 7, 2016 ("Reply"). (Ex. D, InfoGation's Reply in Support of Motion to Dismiss, No. 3:16-cv-05821, Dkt. No. 28). In its Reply, InfoGation asserted, as it explains in the instant brief, that the customer-suit exception to the first-to-file rule does not apply, "as Defendants are not 'mere resellers' of the Google Map application, and instead are integrating Google Maps into their own devices, devices which perform multiple elements of the asserted claim." (*Id.* at 1).

A hearing on InfoGation's Motion to Dismiss is scheduled for January 5, 2017. (Ex. E, Order Granting Extension of Time to Respond and Reply to Motion to Dismiss, Dkt. No. 18 at ¶¶ 4, 6).

## III.   LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

 In determining whether to grant a discretionary stay of an action, courts must weigh competing interests affected by the granting or denial of a stay, including (1) the possible damages which may result from a stay; (2) the hardship or prejudice which a party may suffer in being required to proceed; and (3) the orderly course of justice as measured by whether a stay, or the denial thereof, will simplify the issues, proof and questions of law that might result from a stay. *LG Elecs., Inc. v. Eastman Kodak Co.*, No. 09-CV-0344H (BLM), 2009 WL 1468703, at *3-4 (S.D. Cal. May 26, 2009) (Huff, J.) (citing *Landis*, 299 U.S. at 254-55). Importantly, the proponent of a stay bears the burden of establishing its need. *Id.* (citing *Clinton*, 520 U.S. at 708). If there is "even a fair

1  possibility that the stay for which [the movant] prays will work damage to someone else,

2  the movant must make out a clear case of hardship or inequity in being required to go

3  forward." *Id.* at *4 (citing *CMAX, Inc. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)) (internal

4  quotations omitted).

5  **IV.   ARGUMENT**

6      **A.   InfoGation Will Suffer Harm If the Court Grants a Stay.**

7      The Ninth Circuit has explained that "'if there is even a fair possibility that the

8  stay . . . will work damage to some one [sic] else,' the party seeking the stay 'must make

9  out a clear case of hardship or inequity.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112

10  (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255).

11      In this case, a stay would certainly cause damage to InfoGation. The Court has set

12  this case on a fast track, scheduling trial to begin on December 5, 2017, less than a year

13  from now. (Scheduling Order at ¶33).  This is InfoGation's ideal and deserved scenario as

14  the plaintiff in the first-filed case. If this litigation proceeds, InfoGation will have the

15  opportunity to receive a quick and efficient determination on the merits and, as

16  InfoGation argues and expects, an award of damages for Defendants' infringement of

17  InfoGation's patent. (Complaints at ¶23 and Prayer for Relief).

18      In addition, InfoGation brought this case in its home forum. (Complaints at ¶2;

19  K.Q.P. Decl. at ¶3). InfoGation is and always has been based in San Diego. (K.Q.P. Decl.

20  at ¶3).  If this case is stayed and InfoGation is hauled into the court of Google's choosing,

21  InfoGation will be forced to litigate its claims in a less convenient forum.

22      Furthermore, neither Defendants nor Google have asserted that Defendants agree

23  to be bound by any decision in the Northern District Action, as required by the customer-

24  suit exception. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349,

25  1358 (Fed. Cir. 2011) (citing *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1082-83 (Fed.

26  Cir. 1989)). In *Kahn*, the Federal Circuit determined that a customer's failure to agree

27  to be bound by a determination in the manufacturer's action is a "controlling distinction[]."

28

*Kahn*, 889 F.2d at 1082 ("These are controlling distinctions, for even if General Motors were a mere customer of Motorola, General Motors has not agreed to be bound by the Illinois decision or any injunction against Motorola.")

Moreover, InfoGation would be harmed by the likelihood that the Northern District Action may take considerably longer than the instant case. According to the U.S. Courts' Federal Court Management Statistics, as of June 30, 2016, it takes a median of 24.6 months for civil cases to move from filing to trial in the Northern District. (Exhibit F, Federal Court Management Statistics, Comparison Within Circuit, June 30, 2016, at 9). In addition, Judge Huff acknowledged the case in this Court might progress more quickly than a case in the Northern District. (Transcript of Telephonic Case Management Conference, Nov. 18, 2016 at 4:16-20) ("And so then the Court will consider the applicable standards, but generally I wouldn't be staying a case pending another case. We could go to trial with this schedule probably quite quickly. The Northern District is down several judges, as you know."). Therefore, a stay in this case would create a delay, potentially a delay of greater than one year, in the adjudication of InfoGation's claims. (*See* Exhibit F, Federal Court Management Statistics, Comparison Within Circuit, June 30, 2016, at 9; *see also* Scheduling Order). Such a delay would harm InfoGation, as it would extend InfoGation's litigation costs, and would also harm InfoGation's business. As an operating company with navigation products and services in the same market in which Defendants compete, InfoGation will be harmed by any delay in deciding the merits in this case. (K.Q.P. Decl. at ¶¶4, 5).

Not only would litigation in the Northern District likely take longer than the case before this Court, but after completing the Northern District litigation, InfoGation would then have to return to this Court to resume its case against Defendants. The Northern District Action would not adjudicate all of InfoGation's asserted patent claim elements, as several are directed to Defendants' hardware. (Complaints at ¶15, Complaints at Ex. A, U.S. Patent No. 6,292,743, col. 17, lines 9-23). InfoGation would also have to litigate

**INFOGATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**                    **16cv1902**

1  its damages case against Defendants, as the Google action would not dispose of

2  InfoGation's damages claims against Defendants. (*See infra* Section IV.C.3).

3       Defendants assert that "[t]he pending declaratory judgment action that Google filed

4  in the Northern District of California provides InfoGation with a fair opportunity to

5  litigate whether Google Maps infringes the '743 patent. This will resolve case-dispositive

6  issues affecting InfoGation and all Defendants." (Motion to Stay at 13).  Having a fair

7  opportunity to litigate the infringement of Google Maps, though, misses the point.

8  InfoGation can fairly litigate all of the elements of the asserted claim, if and only if, its

9  case against Defendants proceeds. Otherwise, it will be forced to first tackle its

10 infringement claims in a piecemeal fashion, in one case against Google, and in another

11 against Defendants. This factor weighs against a stay.

12       **B.    Defendants Will Not Suffer Hardship Or Inequity If Required to
         Proceed in This Litigation.**

13

14       "[B]eing required to defend a suit, without more, does not constitute a 'clear case

15 of hardship or inequity.'" *Lockyer*, 398 F.3d at 1112 (referring to language from *Landis*,

16 299 U.S. at 255); see also *Google Inc. v. Creative Labs, Inc.*, No. 16-CV-02628-JST,

17 2016 WL 6947564, at *2 (N.D. Cal. Nov. 28, 2016) ("As a general matter, the 'hardship

18 related to defending a lawsuit is irrelevant when considering whether to grant a stay.'"

19 (quoting *FormFactor, Inc. v. Micronics Japan Co.*, No. CV-06-07159 JSW, 2008 WL

20 361128 (N.D. Cal. Feb. 11, 2008))).

21       In this case, Defendants rely on precisely such an inadequate assertion of harm.

22 (Motion to Stay at 14). Defendants assert that any harm they would incur if required to

23 proceed in this litigation would be based on "having to defend against allegations of

24 infringement over a product, Google Maps, that they did not and do not develop, operate,

25 or control." (*Id.*). "[B]eing required to defend a suit" does not constitute the hardship or

26 inequity required to make this factor weigh in favor of a stay. *Lockyer*, 398 F.3d at 1112.

27

28

Defendants also assert that "any and all information relevant to adjudicating InfoGation's allegations—including necessary documents, witnesses, and information about Google Maps—are in Google's possession. Google should therefore be defending against InfoGation's infringement allegations." (Motion to Stay at 14-15). Defendants' assertion is misguided. If Google needs to be involved in Defendants' defense in this case, the solution is not to leave this Court and proceed with an action brought by Google rather than InfoGation. Defendants can seek third-party discovery of their "partner," Google.  Or, alternatively, Defendants can convince their "partner" to intervene in the litigation before this Court – an action that InfoGation had already indicated nearly two months ago that it would not oppose. (Exhibit G, Email from John Moy, Counsel for InfoGation to Counsel for Defendants).

## C.    A Stay Would Prohibit the Orderly Course of Justice.

### 1.    The Declaratory Judgment Complaint filed by Google is unlikely to proceed.

On November 9, 2016, InfoGation filed a motion to dismiss the Declaratory Judgment Complaint on the following grounds: 1) the Northern District lacks subject matter jurisdiction over the cause of action asserted by Google; and 2) to the extent that the Northern District does possess subject matter jurisdiction, it should exercise its inherent discretion to decline jurisdiction pursuant to the "first-to-file" rule. (*See* Ex. B, Motion to Dismiss, at 1). A hearing on Defendants' Motion to Dismiss is set for January 5, 2017. (Ex. E, Order Granting Extension, at ¶¶ 4, 6). If the Northern District dismisses the Declaratory Judgment Complaint, which is the proper course, a stay in the present case will not simplify any issues, proof or questions of law.

#### a.    The Northern District lacks subject matter jurisdiction over the Declaratory Judgment Complaint.

Pursuant to the Declaratory Judgment Act, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such

INFOGATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS'
MOTION TO STAY

16cv1902

declaration," where "a case of actual controversy [is] within its jurisdiction." 28 U.S.C. § 2201. "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' or 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The act provides that "[j]urisdiction is proper only where 'the facts alleged under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Proofpoint, Inc. v. InNova Patent Licensing, LLC*, No. 5:11-CV-02288-LHK, 2011 WL 4915847, *2 (N.D. Cal. Oct. 17, 2011) (quoting *MedImmune*, 549 U.S. at 127). "[T]o establish an 'actual controversy' based on enforcement activity by a patentee, the pleadings must show that the patentee engaged in affirmative acts directed specifically at the party seeking declaratory judgment." *Proofpoint*, 2011 WL 4915847 at *3 (internal citation omitted). A declaratory judgment complainant bears the burden of demonstrating the existence of an actual controversy. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994); *Proofpoint*, 2011 WL 4915847 at *1.

The Declaratory Judgment Complaint did not establish an "actual controversy" between Google and InfoGation, as it did not allege that InfoGation directed any affirmative acts specifically at Google. Google did not allege that InfoGation directed any cease-and-desist letters, royalty requests, or licensing proposals to Google. Nor did Google allege that InfoGation threatened it with litigation. Instead, the Declaratory Judgment Complaint was based solely on the presence of the patent infringement complaints filed by InfoGation in this judicial district against ZTE, HTC, and Huawei. These complaints allege that claim 15 of the '743 patent is infringed by ***smartphone devices*** manufactured and/or sold by ZTE, HTC, and Huawei. Such allegations, directed to ZTE, HTC, and Huawei, do not constitute affirmative acts directed ***at Google*** and do not alone establish the existence of an "actual controversy" between InfoGation and Google. *See Proofpoint*, 2011 WL 4915847 at *3-5. Accordingly, the Northern District

should dismiss Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, which would completely moot Defendants' current request for a stay.

**b.    The Northern District should dismiss the Northern District Action under the "first-to-file" rule.**

The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys, Inc. v. Medtronic, Inc.* 678 F.2d 93, 94-95 (9th Cir. 1982). "There is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715-SC, 2012 WL 3757486, *10 (N.D. Cal. July 5, 2012) (quoting *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979) (overruled on other grounds by *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, No. 13-17131, 2016 WL 4578362 (9th Cir. Sept. 2, 2016)). "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology,* 611 F.2d at 750. "The rule 'should not be disregarded lightly.'" *Interactive Fitness Holdings, LLC v. ICON Health & Fitness, Inc.*, No. 10-CV-04628-LHK, 2011 WL 1302633, *2 (N.D. Cal. Apr. 5, 2011) (quoting *Alltrade, Inc. v. Uniwield Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

The Declaratory Judgment Act provides courts with discretion to decline jurisdiction over declaratory judgment claims. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). "Courts routinely do so under the 'first-to-file' rule, the 'generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" *Cisco Sys. v. TiVo, Inc.*, No. C 12-02766 RS, 2012 WL 3279532, *3 (N.D. Cal. Aug. 10, 2012) (quoting *Pacesetter*, 678 F.2d at 94-95).

1    "In applying the rule, courts focus primarily on the chronology of the filings, the

2    identity of the parties, and whether the issues presented in the successive actions

3    'substantially overlap.'" *Cisco Sys.*, 2012 WL 3279532, at *3 (citing *Intersearch*

4    *Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957-58 (N.D. Cal. 2008)).

5    There is no dispute that this case was filed prior to the Declaratory Judgment Complaint,

6    and the remaining factors – identity of the parties and substantial overlap of issues –

7    dictate that the Northern District Action should apply the first-to-file rule and decline

8    jurisdiction over Declaratory Judgment Complaint.

9          Regarding the identity of the parties, although Google is not a named defendant in

10   any of the actions pending before this Court, the first-to-file rule does not require exact

11   identity of the parties. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.,* 787 F.3d

12   1237, 1240 (9th Cir. 2015) (internal citations omitted) ("Regarding similarity of the

13   parties, courts have held that the first-to-file rule does not require exact identity of the

14   parties."). Rather, courts focus on judicial efficiency in analyzing the similarity of the

15   parties. In the *Proofpoint* case, the Court noted that although Proofpoint was not a party

16   to the earlier-filed action, given the involvement of the same patent and the substantial

17   similarity of issues in the two cases, judicial efficiency dictated that declaratory judgment

18   jurisdiction should be declined. *Id.* at *7.  Here, Google has claimed to stand in the

19   position of Defendants when it stated in the Declaratory Judgment Complaint that its

20   "partners" – including ZTE, HTC, and Huawei – do not infringe the '743 patent. (*See* Ex.

21   A, Declaratory Judgment Complaint, ¶ 24 & Prayer for Relief ¶ A). Moreover,

22   InfoGation informed ZTE, HTC, and Huawei that it would not oppose a motion by

23   Google to intervene in the Southern District actions. (Ex. G, E-mail to Defendants'

24   counsel). Thus, neither Defendants nor Google would be prejudiced by litigating in the

25   first-filed actions.

26         As for substantial overlap of issues, that factor is clearly established. To invoke the

27   first-to-file rule, the two pending suits must be so duplicative or involve substantially

28

1   similar issues that one court should decide the issues. *Intersearch Worldwide*, 544 F.

2   Supp. 2d at 959-60. The issue raised in the Declaratory Judgment Complaint – whether

3   the Google Maps service infringes the '743 patent – is clearly encompassed by the

4   Southern District actions.

5       Accordingly, InfoGation has requested and expects the Northern District to decline

6   to exercise jurisdiction over the Declaratory Judgment Complaint. If the Northern District

7   grants InfoGation's Motion to Dismiss, Defendants' Motion to Stay in this case will be

8   moot.

9       **2.    The Northern District Action would not be dispositive of this case**
10          **and the "customer-suit" exception does not apply.**

11      In general, "litigation against or brought by the manufacturer of infringing goods

12  takes precedence over a suit by the patent owner against customers of the manufacturer."

13  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). The "customer-suit"

14  exception to the first-to-file rule is applicable "where the first suit is filed against a

15  customer who is simply a reseller of the accused goods, while the second suit is a

16  declaratory action brought by the manufacturer of the accused goods." *Kahn v. Gen.*

17  *Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). "[T]he primary question [in

18  applying the customer-suit exception] is whether the issues and parties are such that the

19  disposition of one case would be dispositive of the other." *Proofpoint*, 2011 WL 4915847

20  at *7 n.5 (citing *Katz v. Siegler*, 909 F.2d 1459, 1463 (Fed. Cir. 1990)).

21      In their Motion to Stay, Defendants argue that the Court should stay this case

22  because "[i]dentical infringement issues in the pending suit between patentee and

23  manufacturer of the accused product favor stay of suit against customers." See Dkt. No.

24  38 at 9. In the present case, however, the infringement issues are overlapping, but not

25  identical. Specifically, Claim 15 of the '743 patent states as follows:

26      15. A mobile navigation system comprising:

27          a *navigation computer*;

28

a *wireless transceiver* coupled to said *navigation computer* for connecting with a navigation server, said navigation server for calculating optimal routes based on real-time information, said optimal routes being formatted using a non-proprietary, natural language description;

a mapping database coupled to said *navigation computer* for reconstructing said optimal route from said non-proprietary, natural language description; and

a *display screen* coupled to said *navigation computer* for displaying said optimal route using said mapping database.

(Complaints at Ex. A, col. 17, lines 9-23) (emphasis added). While Google provides software related to some of the claim limitations, it does not provide the hardware components necessary to meet all of the claim limitations such as the "navigation computer," "wireless transceiver," or "display screen." (*See* Ex. A, Declaratory Judgment Complaint; *see also* Ex. C, Google's Opposition to InfoGation's Motion to Dismiss, at 7). Indeed, Defendants are not merely end users or resellers, but rather they are manufacturers that choose to include the Google Maps application in their devices, and the devices meet key claim limitations of the asserted patent. (*See* Complaints at ¶ 14). It is the responsibility of Defendants to integrate Google's software component with Defendants' hardware components to create the accused products; the Defendants are not merely selling to consumers what they receive from Google. (*See* Motion to Stay, at Declarations in Support of Motions to Stay at ¶ 4). Thus, while the Northern District Action could potentially[2] resolve some of the same infringement issues, it would not resolve several of the infringement issues that must be litigated in this case. Under such circumstances, this case should not be stayed and the customer suit exception does not apply. *See Contentguard Holdings, Inc. v. Google, Inc.*, No. 2:13-CV-01112-JRG, 2014 WL 1477670, at *3-4 (E.D. Tex. Apr. 15, 2014).

---

[2] This assumption would necessarily entail an agreement by Defendants to be bound by any determination of this Northern District, which would be necessary for efficiency and judicial economy. *See Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). Defendants have not provided the necessary agreement.

Defendants cite to *Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 2:12-CV-00003-NT, 2013 WL 1099754 (D. Me. Mar. 15, 2013), for the proposition that the customer-suit exception applies and this Court should stay the instant case. (Motion to Stay at 11). Defendants highlight the District of Maine's decision to apply the customer-suit exception, rejecting the argument that "L.L. Bean is not a mere reseller of Adobe's product but directly infringes Select Retrieval's patent by performing the patented method.'" *Id.* (quoting *Select Retrieval, LLC*, 2013 WL 1099754 at \*5. However, *Select Retrieval* is distinguishable in a number of ways.

First, the District of Maine indicated that the "mere reseller" language did not fit the *Select Retrieval* case well. *Select Retrieval, LLC*, 2013 WL 1099754, at \*5. In that case, the claim of patent infringement was based on a patented method, rather than a patented product. *Id.* LL Bean obtained the entirety of the allegedly infringing technology from Adobe and used the allegedly patented method to facilitate business through its website. *Id.* The District of Maine explained that "[t]he 'mere reseller language applies neatly to those cases" that "involve customers who actually sell an allegedly infringing product or a product that has an allegedly infringing component part." *Id.*. In the case before it, though, "the patent protect[ed] a method which is not incorporated into a component part offered for resale." *Id*. In the instant case, Defendants have infringed a product claim; they receive only part of an infringing product from Google, incorporate it into their products, and their products infringe additional elements of the asserted patent claim. Here, the "mere reseller" language applies and reveals that Defendants are not "mere resellers" as that term has been applied in other cases.

Second, Adobe agreed to defend and indemnify L.L. Bean, and moved to intervene in the District of Maine action. *Id.* at \*2. "Adobe's agreement to indemnify L.L. Bean obviates any need for L.L. Bean to agree to be bound by the California Suit." *Id.* at \*5. In addition, the District of Maine indicated that "Adobe's indemnification agreement also provides some assurance that there is likely to be a sufficient case in controversy with

respect to Adobe's claims against Select Retrieval in the California Suit." *Id.* (citing *Adobe Sys. Inc. v. Kelora Sys. LLC*, No. C 11-3938 CW, 2011 WL 6101545, *3-6 (N.D. Cal. Dec.7, 2011)).[3] In this case, InfoGation is not aware of any agreement by Google to defend and/or indemnify Defendants, nor is it aware of any agreement by Defendants to be bound by the Northern District Action, and Google has not moved to intervene in this litigation.

Third, Select Retrieval sued many Adobe customers in multiple district courts, creating a larger "battlefield on which [a] 'larger fight' is being fought." *Adobe Sys. Inc. v. Select Retrieval, LLC*, No. 3:12-CV-2342-GPC-WMC, 2014 WL 497441, at *1, 5 (S.D. Cal. Feb. 6, 2014) (citing the District of Illinois *Select Retrieval* case). In this case, InfoGation sued three smartphone manufacturers in one court – its home forum, and the smallest and most efficient battlefield possible.

### 3. InfoGation's claims against Defendants involve a different measure of damages.

InfoGation's claims against Defendants involve a measure of damages in connection with Defendants' sales of the accused products identified in the Complaints ("Accused Products"), which will differ from the measure of damages against Google in the Northern District Action. It is entirely possible that the measure of damages in this action will be higher against Defendants than against Google.

Contrary to Defendants' claims, InfoGation is an operating company that provides navigation products that compete with the accused products. (*See* K.Q.P. Decl. at ¶¶ 3-5). As such, while InfoGation does not offer a product that actually practices all of the claim limitations, InfoGation may still be entitled to recover lost profits from Defendants. *Rite-*

---

[3] Indeed, in the California Select Retrieval suit, "Select Retrieval [did] not dispute that a justiciable controversy exists between it and Adobe, such that this Court has jurisdiction over this case under the Declaratory Judgment Act." *Adobe Sys. Inc. v. Select Retrieval, LLC*, No. 3:12-CV-2342-GPC-WMC, 2014 WL 497441, at *3 (S.D. Cal. Feb. 6, 2014). Conversely, InfoGation has contested that a justiciable controversy exists between it and Google in the Northern District Action.

*Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995), cert. denied, 516 U.S. 867 (1995). Proving lost profits involves a fact specific inquiry whereby the patentee must show "a causal relation between the infringement and its loss of profits." *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) (citing *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993)). Showing a causal relation means there is "a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales." *Id.* (citing *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001)). "To show 'but for' causation, the patentee must reconstruct the market to determine what profits the patentee would have made had the market developed absent the infringing product." *Id.* (citing *Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999)).

To reconstruct the market and demonstrate lost profits, InfoGation will need to rely heavily on information and documents in the possession of Defendants in this case. Specifically, InfoGation will need to obtain, *inter alia*, documents and testimony related to Defendants' revenues, losses, and profits associated with the marketing and sale of the Accused Products. Such information is unlikely to be obtained in the Northern District Action, which involves none of the Defendants that are a party to this case. In order to determine the issue of lost profits, therefore, it will be necessary to litigate the issue in this case.

Even if InfoGation is not entitled to lost profits, the measure of damages in determining a reasonable royalty will be different for Defendants than Google. Determining a reasonable royalty will involve analyzing the economic and financial factors that would have been relevant to a fictional license negotiation with InfoGation at the time the infringement began. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). A reasonable royalty determination with Defendants will involve issues that will not be litigated in the Northern District Action. For example,

1  one factor related to the fictional license negotiation that would be considered is the

2  extent the Defendants would have considered a license to the '743 patent would have

3  enabled it to make derivative or convoyed sales of other products. *Deere & Co. v. Int'l*

4  *Harvester Co.*, 710 F.2d 1551, 1559 (Fed. Cir. 1983) (anticipated collateral sales of non-

5  infringing products relevant to determination of royalty rate); *Georgia-Pacific Corp.*, 318

6  F. Supp. at 1120.

7      In sum, the Court should deny Defendants' Motion to Stay because the Northern

8  District Action will not resolve major issues related to damages, which are specific to

9  Defendants in this case.

10 **V.      CONCLUSION**

11     For the foregoing reasons, the Court should deny Defendants Motion to Stay.

12 DATED: December 13, 2016        KIRBY & KIRBY LLP,

13

14                 By:  /s/ *Michael L. Kirby*

15                    Michael L. Kirby
                   Heather W. Schallhorn

16             Attorneys for Plaintiff InfoGation Corp.