1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFOGATION CORP., <br><br> Plaintiff, <br><br> v. <br><br> ZTE CORPORATION; ZTE (USA), INC., <br><br> Defendants. | Case No.:  16-cv-01901-H-JLB <br><br> **ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> [Doc. No. 41.] |
| INFOGATION CORP., <br><br> Plaintiff, <br><br> v. <br><br> HTC CORPORATION; HTC AMERICA, INC., <br><br> Defendants. | Case No.:  16-cv-01902-H-JLB <br><br> **ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> [Doc. No. 49.] |

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INFOGATION CORP.,

                                    Plaintiff,

v.

HUAWEI TECHNOLOGIES CO., LTD.;
HUAWEI DEVICE USA, INC.,

                                    Defendants.

Case No.:  16-cv-01903-H-JLB

**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**

[Doc. No. 46.]

On February 24, 2017, Defendants ZTE (USA), Inc.,[1] HTC,[2] and Huawei,[3] each filed a motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.  (16-cv-1901-Doc. No. 41; 16-cv-1902-Doc. No. 49; 16-cv-1903-Doc. No. 46.)  On March 13, 2017, Plaintiff InfoGation Corp. filed its oppositions to Defendants' motions.  (16-cv-1901-Doc. No. 45; 16-cv-1902-Doc. No. 55; 16-cv-1903-Doc. No. 50.)  On March 20, 2017, Defendants filed their replies.  (16-cv-1901-Doc. No. 47; 16-cv-1902-Doc. No. 57; 16-cv-1903-Doc. No. 53.)

The Court held a hearing on the matter on March 27, 2017.  John P. Moy and Heather W. Schallhorn appeared for InfoGation.  Harold H. Davis appeared for ZTE.  Fred I. Williams appeared for HTC.  David S. Almeling, Mark Liang, and Jason W. Wolff appeared for Huawai.  For the reasons below, the Court denies Defendants' motions for judgment on the pleadings.

///

///

---

[1]     Defendant ZTE Corporation was dismissed from the action on October 11, 2016.  (16-cv-1901-Doc. No. 21.)

[2]     Defendant "HTC" includes HTC Corporation and HTC America, Inc.

[3]     Defendant "Huawei" includes Huawei Technologies Co., Ltd. and Huawei Device USA, Inc.

2

**Background**

On July 27, 2016, Plaintiff InfoGation Corp. filed three separate complaints for patent infringement against Defendants ZTE, HTC, and Huawei, alleging infringement of U.S. Patent No. 6,292,743.  (16-cv-1901-Doc. No. 1; 16-cv-1902-Doc. No. 1; 16-cv-1903-Doc. No. 1.)  Specifically, Plaintiff alleges that Defendants' smartphones, which run the Android operating system and can connect to a Google Maps navigation server through a wireless carrier's network data, infringe, either literally or through the doctrine of equivalents, claim 15 of the '743 patent.  (Id.)

The '743 patent is entitled "Mobile Navigation System" and "relates generally to [a] mobile navigation system and apparatus, and more particularly to a distributed navigation system having a wireless connection to a server for calculating optimal routes using real-time data."  U.S. Patent No. 6,292,743, at 1:5-8.  In describing the prior art, the '743 patent explains that, at the time of the invention, "navigation systems, in which automobiles are equipped with a navigational computer that includes a display screen, an input means such as a keypad or a remote control, and a storage means such as a CD" had become quite popular.  Id. at 1:10-14.  The '743 patent explains that the problem with these devices is that they are "stand-alone devices that rely completely on data stored on the local storage device for geographical and other information.  Thus, the capacity of the storage device becomes a limiting factor as to how much information is available to users.  In addition, users must update their mapping databases frequently to stay current."  Id. at 1:27-32.

In light of these problems, the '743 patent explains that it is desirable to have an online navigation system that can provide current information to the user – including real-time information such as traffic, weather, and road conditions – without the need for the system to update its local databases whenever changes occur.  '743 Patent at 1:36-41.  The '743 patent acknowledges that there are some prior art navigation systems, such as

3

Toyota's MONET system, that are able to connect to online servers and provide real-time information to the user.  Id. at 1:46-61.  But the '743 patent notes that there are several problems with those real-time navigation systems.

The '743 patent explains the problems with the real-time navigation systems at the time of the invention as follows:

> In these current systems, all geographical data transmitted by the server is in a propriety [*sic*] format.  That is, downloaded information used to describe geographical data, such as point-of-interest addresses and detailed map data, includes data points, indices and the like that are specific to the particular mapping database used on the client.
>
> Accordingly, the client navigation system must have a particular pre-defined mapping database installed in order to work with the server.  In some cases, the mapping database used by the client and server must be identical.  If there is a mismatch between the expected mapping database and the actual mapping database used on the client, the client cannot properly interpret the geographical data downloaded from the server and the system will fail to operate.
>
> Accordingly, customers using these current systems must obtain the latest version of the mapping database software available.  This presents a major burden for customers and manufacturers alike due to the high frequency in which these databases must be updated.
>
> In addition, the data downloaded by the client generally requires high bandwidth communication channels due the shear volume of data transmitted by these current systems.  Such high bandwidth communication channels are expensive and may not be readily available in all areas.  It would be desirable to develop a system that requires lower bandwidth communication channels than that required by these current systems.
>
> Another problem with the current systems outlined above is that the client must include sophisticated algorithms for calculating optimal routes.  In addition, these route-calculating algorithms in the client must be updated in accordance with current services and options available on the server. . . .

4

> Another problem with the current systems is that the proprietary server cannot be used with navigation systems and mapping databases provided by other manufacturers.

'743 Patent at 1:62-2:37.

The '743 patent seeks to remedy these problems in the prior art systems by using a generic natural language description to specify the optimal routing information that is generated at the server and then transmitted from the server to the client.  '743 Patent at 3:21-23.  The specification of the '743 patent describes "a client navigation system" as follows:

> The client navigation system establishes a wireless connection to the server via cellular telephone technology or the like.  Once connected, the client requests a specific route by uploading start and stop specifications to the server.  The server independently calculates an optimal route for the user based on real-time and current data available to the server, as well as user preferences or the like.
>
> The routing information is formatted using a natural language specification in accordance with each specific embodiment of the present invention.

Id. at 3:27-36.

The '743 patent explains that by having the route data generating only at the server, it allows the client devices to be much less complex and not require software changes when the server provides new information.  '743 Patent at 2:53-3:10.  The '743 patent further explains that by using a generic natural language description to specify the optimal routing information, the optimal routing data from the server "can be interpreted by a variety of clients with minimal software additions."  Id. at 3:11-14.  Further, the patent explains that the natural language routing descriptions can be highly compressed allowing the information to travel on lower bandwidth communication channels.  Id. at 3:14-20.

5

16-cv-01901-H-JLB

Independent claim 15 of the '743 patent, the only claim asserted by Plaintiff (16-cv-1901-Doc. No. 45 at 7), claims:

A mobile navigation system comprising:

a navigation computer;

a wireless transceiver coupled to said navigation computer for connecting with a navigation server, said navigation server for calculating optimal routes based on real-time information, said optimal routes being formatted using a non-proprietary, natural language description;

a mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description; and

a display screen coupled to said navigation computer for displaying said optimal route using said mapping database.

Id. at 17:9-23.

On November 1, 2016, Defendants each filed an answer and counterclaims to Plaintiff's complaint.  (16-cv-1901-Doc. No. 22; 16-cv-1902-Doc. No. 21; 16-cv-1903-Doc. No. 22.)  On November 22, 2016, the Court issued a scheduling order for the three actions setting forth all dates leading up to trial and scheduling a trial date of December 5, 2017 at 9:00 a.m.  (16-cv-1901-Doc. No. 31; 16-cv-1902-Doc. No. 39; 16-cv-1903-Doc. No. 31.)

By the present motions, Defendants move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.  (16-cv-1901-Doc. No. 41-1; 16-cv-1902-Doc. No. 49-1; 16-cv-1903-Doc. No. 46-1.)  Specifically, Defendants argue that claim 15

16-cv-01901-H-JLB

of the '743 patent fails to claim patent-eligible subject matter and, therefore, is invalid under 35 U.S.C. § 101.  (16-cv-1901-Doc. No. 41-1 at 1.)[4]

**Discussion**

**I.   Legal Standards for a Rule 12(c) Motion for Judgment on the Pleadings**

In patent cases, a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the "the procedural law of the regional circuit." Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288, 1293 (Fed. Cir. 2016). Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "'Judgment on the pleadings is properly granted when[, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012).  The Ninth Circuit has explained that the standard for deciding a Rule 12(c) motion "is 'functionally identical'" to the standard for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (quoting Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989)); accord Chavez, 683 F.3d at 1108.

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A

---

[4]     The parties have filed nearly identical briefing for the Rule 12(c) motions across the three cases. (See, e.g., 16-cv-1901-Doc. No. 41-1; 16-cv-1902-Doc. No. 49-1; 16-cv-1903-Doc. No. 46-1.) Accordingly, in analyzing Defendants' Rule 12(c) motions, the Court will cite to the briefing in Case No. 16-cv-1901 unless otherwise noted.

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). But, a court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, it is improper for a court to assume the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

The Federal Circuit has expressly recognized that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1373 (Fed. Cir. 2016); see, e.g., Amdocs, 841 F.3d at 1293 (reviewing eligibility under § 101 on an appeal from a grant of judgment on the pleadings); see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1347 (Fed. Cir. 2016) ("Courts may . . . dispose of patent-infringement claims under § 101 whenever procedurally appropriate."). Further, the Federal Circuit has explained that where there is "no claim construction dispute relevant to the eligibility issue," evaluation of a patent claim's subject matter eligibility under §

8

101 can proceed before claim construction.[5]  <u>Genetic Techs.</u>, 818 F.3d at 1373; <u>see also</u> <u>Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)</u>, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.").

## II.     Legal Standards for Patent Eligibility under § 101

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  The Supreme Court has "'long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable.'"  <u>Ass'n for Molecular Pathology v. Myriad Genetics, Inc.</u>, 133 S. Ct. 2107, 2116 (2013).  "The concern underlying these judicial exclusions is that 'patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity.'"  <u>Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.</u>, 827 F.3d 1042, 1047 (Fed. Cir. 2016).

"The Supreme Court has devised a two-stage framework to determine whether a claim falls outside the scope of section 101."  <u>Affinity Labs of Texas, LLC v. DIRECTV, LLC</u>, 838 F.3d 1253, 1257 (Fed. Cir. 2016); <u>see</u> <u>Alice Corp. Pty. v. CLS Bank Int'l</u>, 134 S. Ct. 2347, 2355 (2014).  "The prescribed approach requires a court to determine (1) whether the claim is directed to a patent-ineligible concept, i.e., a law of nature, a natural phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim' into a patent-eligible application."  <u>Affinity Labs</u>, 838 F.3d at 1257 (internal quotation marks omitted) (citing <u>Alice</u>, 134 S. Ct. at 2355).  "In the context of claims that are challenged as containing only abstract ideas, those two stages are typically

---

[5]     Here, neither side has asserted that there is a claim construction dispute relevant to the § 101 eligibility issue in these cases.  (<u>See generally</u> 16-cv-1901-Doc. Nos. 41-1, 45.)

referred to as the 'abstract idea' step and the 'inventive concept' step." Id.

"The 'abstract idea' step of the inquiry" requires courts "to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." Id. at 1257. "The 'inventive concept' step requires [courts] to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed. Id. at 1258. "This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'" FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1093 (Fed. Cir. 2016).

## III.    Analysis

The Court begins with step one of the Alice inquiry. Defendants argue that under step one, claim 15 is directed to an abstract idea because the claim is specifically directed to the idea of providing directions in a natural language. (16-cv-1901-Doc. No. 41-1 at 7-16.) In response, Plaintiff argues that neither claim 15 specifically nor the '743 patent as a whole is directed to providing the end-user of the navigation system with directions in a natural language; rather, claim 15 is directed to a specific improvement to the technologic process of mobile navigation that existed at the time of the invention. (16-cv-1901-Doc. No. 45 at 7-9.) Plaintiff argues, therefore, that claim 15 is not directed to an abstract idea. (Id.)

"The step one inquiry focuses on determining 'whether the claim at issue is 'directed to' a judicial exception, such as an abstract idea.'" Apple, Inc. v. Ameranth, Inc., 842 F.3d 1229, 1241 (Fed. Cir. 2016). The Federal Circuit has explained that "[w]hile the two steps of the Alice framework are related, the 'Supreme Court's formulation makes clear that the first-stage filter is a meaningful one, sometimes ending the § 101 inquiry.'" Thales Visionix Inc. v. United States, No. 2015-5150, __ F.3d __ 2017 WL 914618, at *3 (Fed.

1  Cir. Mar. 8, 2017).

2       The Federal Circuit has cautioned that the step one inquiry does not "simply ask

3  whether the claims involve a patent-ineligible concept, because essentially every routinely

4  patent-eligible claim involving physical products and actions involves a law of nature

5  and/or natural phenomenon—after all, they take place in the physical world." Enfish, LLC

6  v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016); see also In re TLI Commc'ns

7  LLC Patent Litig., 823 F.3d 607, 611 (Fed. Cir. 2016) ("[I]n determining whether the

8  claims are directed to an abstract idea, we must be careful to avoid oversimplifying the

9  claims because '[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply

10 laws of nature, natural phenomena, or abstract ideas.'"). "Rather, the 'directed to' inquiry

11 applies a stage-one filter to claims, considered in light of the specification, based on

12 whether 'their character as a whole is directed to excluded subject matter.'" Enfish, 822

13 F.3d at 1335.

14      In so doing, a court should "determine whether the claims 'focus on a specific means

15 or method that improves the relevant technology' or are 'directed to a result or effect that

16 itself is the abstract idea and merely invoke generic processes and machinery.'" Apple,

17 842 F.3d at 1241; see Affinity Labs of Texas, LLC v. Amazon.com Inc., 838 F.3d 1266,

18 1270 (Fed. Cir. 2016) ("In addressing the first step of the section 101 inquiry, as applied to

19 a computer-implemented invention, it is often helpful to ask whether the claims are directed

20 to 'an improvement in the functioning of a computer,' or merely 'adding conventional

21 computer components to well-known business practices.'"); see also Enfish, 822 F.3d at

22 1335 ("The Supreme Court has suggested that claims 'purport[ing] to improve the

23 functioning of the computer itself,' or 'improv[ing] an existing technological process'

24 might not succumb to the abstract idea exception."). The Federal Circuit has "held claims

25 ineligible as directed to an abstract idea when they merely collect electronic information,

26 display information, or embody mental processes that could be performed by humans."

27

28

16-cv-01901-H-JLB

1    Thales Visionix, 2017 WL 914618, at *3.

2         Here, the invention claimed in claim 15 of the '743 patent does not merely collect

3    electronic information, display information, or embody a mental processes that could be

4    performed by humans.  Rather, the claim is directed to improving an existing technological

5    process, specifically how an online server communicates in real-time with a local mapping

6    database within a mobile navigation system.  The '743 patent explains that although prior

7    art real-time mobile navigation systems existed at the time of the invention, those

8    navigation systems transmitted data from the server "in a proprietary format."  '743 Patent

9    at 1:63.  The patent explains that this caused certain problems, for example, the proprietary

10   server could not be used with navigation systems and mapping databases from other

11   manufacturers, and the transmitted data required high bandwidth communication channels.

12   Id. at 2:14-42.  Claim 15 of the '743 patent attempts to alleviate these problems by using

13   "a non-proprietary, natural language description" to format the route data that is generated

14   at the server and then sent from the server to the local mapping database, rather than using

15   a proprietary format.  See id. at 3:21-45, 17:9-23.  The '743 patent explains that by using a

16   generic natural language description generated at the server, navigation systems from any

17   vendor can more easily be adapted with the server of the invention, and also the transmitted

18   data is able to travel on lower bandwidth communication channels.  Id. at 3:4-20.  Thus, a

19   review of the '743 patent's claimed advance over the prior art shows that claim 15 focuses

20   on a specific means, here route data formatted using a non-proprietary, natural language

21   description generated at the server, for improving an existing technological process, here

22   how an online server communicates in real-time with a local mapping database in a mobile

23   navigation system.  See Affinity Labs, 838 F.3d at 1257 (explaining that under step one of

24   the Alice inquiry, a court should focus on the claimed advance over the prior art).[6]  As

25

26   [6]     At times, Defendants criticize Plaintiff for focusing on language in the specification during the §
27   101 inquiry.  (See, e.g., 16-cv-1901-Doc. No. 47 at 3-4.)  But, as Defendants themselves admit, in

28

such, claim 15 is not directed to an abstract idea.  See Enfish, 822 F.3d at 1339 ("[T]he claims are directed to a specific implementation of a solution to a problem in the software arts.  Accordingly, we find the claims at issue are not directed to an abstract idea."); Thales Visionix, 2017 WL 914618, at *4-5.

Further, the Court rejects Defendants' characterization of claim 15 as simply being directed to "providing directions in a natural language."  (16-cv-1901-Doc. No. 41-1 at 7.) Defendants' characterization impermissibly oversimplifies claim 15.  See TLI Commc'ns, 823 F.3d at 611 (explaining that courts must be careful to "to avoid oversimplifying the claims").  Claim 15 is not simply directed to the idea of providing directions in a natural language in the abstract, nor is it directed to the idea of providing directions in a natural language to a person, such as the end user in a navigational system.[7]  Rather, claim 15 is specifically directed to formatting the route data into a non-proprietary, natural language description that is generated at the server and then transferred to a local mapping database within a mobile navigation system.

When properly characterized, it becomes clear that claim 15 is directed to a specific improvement to an existing technological process rather than an abstract idea.  For example, Defendants argue that claim 15 is directed to an abstract idea because the claim

---

performing step one of the Alice inquiry, a court should consider what the specification describes as the claimed invention's innovation over the prior art.  (16-cv-1901-Doc. No. 41-1 at 7.)  See Affinity Labs, 838 F.3d at 1257; see, e.g., Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1348 (Fed. Cir. 2015); Enfish, 822 F.3d at 1337, 1339.

[7]     Because claim 15 is not directed to communicating with an end user using natural language, the present case is distinguishable from Concaten, Inc. v. Ameritrak Fleet Sols., LLC, 131 F. Supp. 3d 1166 (D. Colo. 2015), aff'd, No. 2016-1112, 2016 WL 5899749 (Fed. Cir. Oct. 11, 2016), O2 Media, LLC v. Narrative Sci. Inc., 149 F. Supp. 3d 984 (N.D. Ill. 2016), and Intellectual Ventures I LLC v. Capital One Fin. Corp., No. 2016-1077, __ F.3d __, 2017 WL 900031 (Fed. Cir. Mar. 7, 2017), cited by Defendants in their briefing.  (16-cv-1901-Doc. No. 41-1 at 10-12; Doc. No. 47 at 5-6.)  The claims at issue in those cases were directed to an improved method/system for providing certain data/information to end users of the network/system, not between technical components within the network/system.  See Concaten, 131 F. Supp. 3d at 1170, 1172-73; O2 Media, 149 F. Supp. 3d at 991-95; Intellectual Ventures, 2017 WL 900031, at *4-5.

is directed to a process that could be performed by a human with a pencil and paper.  (16-cv-1901-Doc. No. 41-1 at 8-11; Doc. No. 47 at 5.)  See Synopsys, Inc. v. Mentor Graphics Corp., 839 F.3d 1138, 1145 (Fed. Cir. 2016) (explaining that a claim is directed to an abstract idea if the claim is directed to a process that could be performed mentally or with pencil and paper).  But a human with a pencil and paper cannot format route data into a natural language description that is generated on a server and then transferred to a local database.  Claim 15, as properly characterized, "stand[s] apart" from claims that courts have found to be directed to abstract ideas "because [it does] not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of [mobile navigation] computer networks."  DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Defendants argue that claim 15 is directed to an abstract idea because it fails to adequately claim a specific technical improvement to a computer process.  (16-cv-1901-Doc. No. 41-1 at 14-16; Doc. No. 47 at 1-4.)  Defendants argue that claim 15 merely describes the desired outcome of providing directions in a natural language without reciting the technical manner in which this is achieved.  (Doc. No. 41-1 at 14; Doc. No. 47 at 3.)  Under step one of the Alice inquiry, a court should "determine whether the claims 'focus on a specific means or method that improves the relevant technology' or are 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'"  Apple, 842 F.3d at 1241; see McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("The abstract idea exception has been applied to prevent patenting of claims that abstractly cover results where 'it matters not by what process or machinery the result is accomplished.'"); see, e.g., Affinity Labs, 838 F.3d at 1269 (finding claims directed to abstract idea where claims did "no more than describe a

desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem"); but see Amdocs, 841 F.3d at 1295 (stating that the dissent's means/ends analysis for determining patent-eligibility "is not now the law, either in statute or in court decision"). But claim 15 is not directed to some abstract result or effect. Rather, claim 15 provides a specific technological means for remedying the specific problems with real-time mobile navigation systems that the '743 patent sought to address: formatting the route data using a non-proprietary, natural language description. By confining claim 15 to the use of route data formatted in a non-proprietary, natural language description within a mobile navigation system, the patent confines claim 15 to a particular technologic solution to identified technical problems within mobile navigation systems. See Amdocs, 841 F.3d at 1303 (finding claim patent-eligible where it "recite[d] a technological solution to a technological problem specific to computer networks"). Defendants criticize claim 15 for failing to include a means-plus-function limitation that could be limited to a specific algorithm in the specification. (16-cv-1901-Doc. No. 47 at 3.) But Defendants fail to provide the Court with any authority holding that in order for a claim related to computer technology to be patent-eligible under § 101, the claim must be tied to some specific algorithm in either the claim language itself or the specification.[8]

In sum, Defendants have failed to establish that claim 15 of the '743 patent is directed to an abstract idea under step one of the Alice inquiry. Accordingly, the Court does not need to proceed to step two of the inquiry. Enfish, 822 F.3d at 1339; see McRO, 837 F.3d at 1312 ("If the claims are not directed to an abstract idea, the inquiry ends."); Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1047 (Fed. Cir. 2016) ("If the answer [to the step one inquiry] is no, the inquiry is over: the claim falls within the ambit

---

[8] Indeed, for example in Amdocs, the Federal Circuit found claims involving computer technology to be patent-eligible even though the claims were not tied to any specific algorithm. See, e.g., Amdocs, 841 F.3d at 1299-1304; see also e.g., DDR Holdings, 773 F.3d at 1249-50, 1256-59.

15

16-cv-01901-H-JLB

1  of § 101.").  At this stage in the proceedings, Defendants have failed to establish that claim

2  15 of the '743 patent is invalid for failing to claim patent-eligible subject matter as required

3  by 35 U.S.C. § 101.  Accordingly, the Court denies Defendants' motions for judgment on

4  the pleadings.

<u>**Conclusion**</u>

6  For the reasons above, the Court denies Defendants' Rule 12(c) motions for

7  judgment on the pleadings.

8  **IT IS SO ORDERED.**

9  DATED: March 27, 2017

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

16

16-cv-01901-H-JLB