Edward A. Pennington (D.C. Bar No. 422006) (admitted *pro hac vice*)
   epennington@sgrlaw.com
John P. Moy (D.C. Bar No. 466908) (admitted *pro hac vice*)
   jmoy@sgrlaw.com
Sean T.C. Phelan (D.C. Bar No. 997681) (admitted *pro hac vice*)
   sphelan@sgrlaw.com
John P. Pennington (D.C. Bar No. 1018204) (admitted *pro hac vice*)
   jpennington@sgrlaw.com
Darlene K. Tzou (VA Bar No. 91139) (admitted *pro hac vice*)
   dtzou@sgrlaw.com
**SMITH, GAMBRELL & RUSSELL, LLP**
1055 Thomas Jefferson Street, N.W., Suite 400
Washington, D.C. 20007
Telephone: 202.263.4300
Facsimile: 202.263.4329

Michael L. Kirby (SBN 50895)
   mike@kirbyandkirbylaw.com
Heather W. Schallhorn (SBN 299760)
   heather@kirbyandkirbylaw.com
**KIRBY & KIRBY LLP**
501 West Broadway, Suite 1720
San Diego, California 92101
Telephone: 619.487.1500
Facsimile: 619.501.5733

**Attorneys for Plaintiff InfoGation Corp.**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFOGATION CORP., <br><br> Plaintiff, <br><br> v. <br><br> ZTE (USA), INC., <br><br> Defendant. | Case No.: 3:16-cv-01901-H-JLB <br><br> **PLAINTIFF INFOGATION CORP.'S OPENING CLAIM CONSTRUCTION BRIEF** |

| | |
|---|---|
| INFOGATION CORP., | Case No.:  3:16-cv-01902-H-JLB |
| Plaintiff, | |
| v. | |
| HTC CORPORATION and HTC AMERICA, INC., | |
| Defendants. | |

| | |
|---|---|
| INFOGATION CORP., | Case No.:  3:16-cv-01903-H-JLB |
| Plaintiff, | |
| v. | |
| HUAWEI DEVICE USA, INC., HUAWEI DEVICE CO., LTD., and HUAWEI DEVICE (DONGGUAN) CO. | |
| Defendants. | |

1

# **TABLE OF CONTENTS**

2

I. BACKGROUND OF THE '743 PATENT ................................................................. 1

II. LEGAL STANDARDS ........................................................................................... 5

III. PROPOSED CONSTRUCTIONS ......................................................................... 7

    A.    "natural language" ....................................................................................... 7

    B.    "non-proprietary" ......................................................................................... 9

    C.    "mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description" ................................................................................. 11

    D.    "optimal routes/optimal route" .................................................................. 14

IV. CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Abraxis Bioscience, Inc. v. Maybe Pharm. (USA), Inc.,*
  467 F.3d 1370 (Fed. Cir. 2006) .................................................................. 6

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
  314 F.3d 1313 (Fed. Cir. 2003) ................................................................ 15

*Aventis Pharm. S.A. v. Hospira, Inc.,*
  675 F.3d 1324 (Fed. Cir. 2012) .................................................................. 6

*Dealertrack, Inc. v. Huber,*
  674 F.3d 1315 (Fed. Cir. 2012) .................................................................. 7

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.,*
  257 F.3d 1364 (Fed. Cir. 2005) .................................................................. 5

*Energizer Holdings, Inc. v. Int'l Trade Comm'n,*
  435 F.3d 1366 (Fed. Cir. 2006) ................................................................ 15

*Laryngeal Mask Co. Ltd. v. Ambu,*
  618 F.3d 1367 (Fed. Cir. 2010) .................................................................. 6

*Linear Tech. Corp. v. Int'l Trade Comm'n,*
  566 F.3d 1049 (Fed. Cir. 2009) .................................................................. 7

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................................... 5, 6

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.,*
  723 F.3d 1363 (Fed. Cir. 2013) ................................................................ 15

*Thorner v. Sony Computer Entm't Am. L.L.C.,*
  669 F.3d 1362 (Fed. Cir. 2012) ............................................................... 6, 7

*Toshiba Corp. v. Imation Corp.,*
  681 F.3d 1358 (Fed. Cir. 2012) .................................................................. 6

*Wellman, Inc. v. Eastman Chem. Co.,*
  642 F.3d 1355 (Fed. Cir. 2011) ................................................................ 15

1   Pursuant to the Court's November 22, 2016 Scheduling Order, Plaintiff InfoGation

2   Corp. ("InfoGation") hereby submits its Opening Claim Construction Brief.

3   **I.   BACKGROUND OF THE '743 PATENT**

4       The application that issued as U.S. Patent No. 6,292,743 ("the '743 patent") was filed

5   on January 6, 1999.  Titled "Mobile Navigation System," the '743 patent is generally

6   directed to a "mobile navigation system and apparatus, and more particularly to a distributed

7   navigation system having a wireless connection to a server for calculating optimal routes

8   using real-time data." ('743 patent, col. 1, ll. 5-8).

9       As previously discussed in InfoGation's Opposition to the Defendants' Motion for

10  Judgment on the Pleadings, the '743 patent is directed to a client-server navigation system

11  that was designed to address some of the problems with existing client-server navigation

12  systems at the time.

13      At the time of the invention, geographical data provided by the server to the client in

14  navigation systems was in a proprietary format that was specific to the particular mapping

15  database used by the client:

16          In these current systems, all geographical data transmitted by the server is in a
            propriety [sic] format.  That is, downloaded information used to describe
17          geographical data, such as point-of-interest addresses and detailed map data,
            includes data points, indices and the like that are specific to the particular
18          mapping database used on the client.

19  ('743 patent, col. 1, ll. 62-67).

20          Another problem with the current systems is that the proprietary server cannot
            be used with navigation systems and mapping databases provided by other
21          manufacturers.  As stated, using current systems, client software must be
            frequently customized and very specific mapping software must be used.  It
22          would be desirable to have a navigation system that can be easily adapted to
            work with a variety of mapping software and navigational systems.
23
    ('743 patent, col. 2, ll. 34-42).  This resulted in significant problems for users of such client-
24
25  server systems.  Specifically, if the mapping databases of the client and server did not match

26  – for example, if the client and server mapping databases were from different manufacturers,

27  or if the client mapping database was out of date relative to the server mapping database – a

28  database mismatch failure would occur:

Accordingly, the client navigation system must have a particular pre-defined mapping database installed in order to work with the server. In some cases, the mapping database used by the client and server must be identical. If there is a mismatch between the expected mapping database and the actual mapping database used on the client, the client cannot properly interpret the geographical data downloaded from the server and the system will fail to operate.

('743 patent, col. 1, l. 62 – col. 2, l. 8).

The '743 patent provided the following solution to this technological incompatibility problem. First, the '743 patent calls for route generation to take place at the server instead of the client, where the server calculates the optimal route based on real-time conditions. This enabled client devices to be less complex than those available at the time of the patent application. ('743 patent, col. 2, ll. 53-59). Second, the route generated by the server was received by the client as a natural language description:

A generic natural language description is used to specify optimal routing information that is transmitted from the server to the client. *The natural language description is completely independent from the local mapping database software used on the clients, and can therefore be used in conjunction with any type of mapping database software.*

('743 patent, col. 3, ll. 21-26) (emphasis added). Moreover, the transmission of routing information from the server to the client is streamed in a standard, non-proprietary format to allow for compatibility across different device manufacturers. (*See* '743 patent, col. 7, ll. 37-44).

Third, the '743 patent calls for the optimal route to be reconstructed from that route information at the client in the format required by the client:

The routing information is formatted using a natural language specification in accordance with each specific embodiment of the present invention. Generally this specification includes a plain text description for each link in the route using pre-defined generic terms such as road names and turning directions. The client interprets this routing data and interfaces with the local mapping database to reconstruct, in the format required by the client, the optimal route from the natural language description. This is accomplished by using a mapping reconstruction algorithm stored on the client.

Once the route is reconstructed, it is displayed on the display screen on the client navigation system, using whatever mapping database is present on the client. *In this fashion, the database software used on the server is completely hardware and software independent from that used on the client.*

('743 patent, col. 3, ll. 35-51) (emphasis added).  By generating the route at the server instead of the client, and with the client receiving that routing information in a non-proprietary natural language format and reconstructing that route, the '743 patent not only solved the problem of database mismatch failure, but also allowed for greater interoperability between navigation servers and clients, thereby improving upon the existing technological process of mobile navigation that existed at the time of invention.

Figure 1 of the '743 patent provides a graphical overview of the entire operational environment:



Fig 1

. In the '743 patent, and in the above figure, the client device is referred to as the "navigation system," and is labeled as element 102.

Figure 2 of the '743 patent provides a more detailed look at the components of navigation system 102:

1



Fig. 2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22      Claim 15 of the '743 patent, the only asserted claim in this litigation, is directed to the

23  client device.  Claim 15 reads as follows:

24

25

26

27

28

15. A mobile navigation system comprising:

a navigation computer;

a wireless transceiver coupled to said navigation computer for connecting with a navigation server, said navigation server for calculating optimal routes based on real-time information, said optimal routes being formatted using a non-proprietary, natural language description;

a mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description; and

a display screen coupled to said navigation computer for displaying said optimal route using said mapping database.

('743 patent, col. 17, ll. 10-23).

The parties agree that the term "navigation server" should be construed as "a server that provides navigation function." The parties dispute the construction of the following:

- "natural language"
- "non-proprietary"
- "mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description"
- "optimal routes/optimal route"

## II.   LEGAL STANDARDS

*Phillips v. AWH Corp.* is the seminal case on claim construction.  415 F.3d 1303 (Fed. Cir. 2005) (en banc).  Per *Phillips*, claims should be read as having "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the . . . effective filing date of the patent application." *Id.* at 1313.  Because a person of ordinary skill in the art is understood to have read the claims, specifications, and file histories of the patents at issue, *Phillips* holds that statements from such "intrinsic evidence" are given weight when construing claims. *Id.*  Only where this Court is unable to determine the meaning of a claim term after considering the intrinsic evidence—the patent and its prosecution history—may it then look to extrinsic evidence to resolve any ambiguity. *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1373 (Fed. Cir. 2005).

1    In construing the claims of a patent, the Federal Circuit has repeatedly held that
2    each claim term should generally be given its "ordinary and customary meaning."
3    *Phillips*, 415 F.3d at 1312. "[T]he ordinary meaning of a claim term is its meaning to the
4    ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321 (internal
5    quotations omitted). Deviation from the plain and ordinary meaning is permitted "under
6    two circumstances: '(1) when a patentee sets out a definition and acts as [its] own
7    lexicographer, or (2) when the patentee disavows the full scope of a claim term either in
8    the specification or during prosecution.'" *Aventis Pharm. S.A. v. Hospira, Inc.*, 675 F.3d
9    1324, 1330 (Fed. Cir. 2012) (quoting *Thorner v. Sony Computer Entm't Am. L.L.C.*, 669
10   F.3d 1362 (Fed. Cir. 2012)).

11   Looking at the first condition of the *Thorner* test, "[t]o be his own lexicographer, a
12   patentee must use a special definition of the term [that] is clearly stated in the patent
13   specification or file history." *Laryngeal Mask Co. Ltd. v. Ambu*, 618 F.3d 1367, 1372
14   (Fed. Cir. 2010) (citations omitted). As *Thorner* holds, "[i]t is not enough for a patentee
15   to simply disclose a single embodiment or use a word in the same manner in all
16   embodiments, the patentee must clearly express an intent to redefine the term." 669 F.3d
17   at 1365 (citations omitted); *see also Abraxis Bioscience, Inc. v. Maybe Pharm. (USA)*,
18   *Inc.*, 467 F.3d 1370, 1376 (Fed. Cir. 2006) (Patentee acted as lexicographer by stating
19   "by the term 'edetate,' we mean . . ." (emphasis added)). Absent a clear intent to redefine
20   a claim term, the term's ordinary and customary meaning controls. *Thorner*, 669 F.3d at
21   1315.

22   Looking at the second condition of the *Thorner* test, the patentee must
23   unambiguously disavow claim scope. "A statement in the prosecution history can only
24   amount to disclaimer if the applicant 'clearly and unambiguously' disavowed claim
25   scope." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1367 (Fed. Cir. 2012) (emphasis
26   added and internal citation omitted). The patentee cannot disavow claim scope in the
27   specification absent a "clear intention to limit the claim scope using words or expressions
28   of manifest exclusion or restriction, which is necessary to further narrow the claim

1  language." *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1058 (Fed. Cir.

2  2009) (citing cases); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir.

3  2012) ("[I]t is improper to read limitations from a preferred embodiment described in the

4  specification—even if it is the only embodiment—into the claims absent a clear

5  indication in the intrinsic record that the patentee intended the claims to be so limited."

6  (emphasis added)).

## III.   PROPOSED CONSTRUCTIONS

8     For each disputed claim term, InfoGation believes the term should be given its

9  plain and ordinary meaning, which is the meaning to a person of ordinary skill in the art

10  after having read the claims, specifications, and file histories of the '743 patent.

11  Therefore, in each discussion below, InfoGation will inform this Court of the relevant

12  intrinsic evidence that defines the plain and ordinary meaning for each disputed term.

13     Additionally, none of the disputed claim terms allow for a deviation from the plain

14  and ordinary meaning under the *Thorner* test. A review of the '743 patent specification

15  and file history shows that the patentee did not clearly express an intent to redefine any of

16  the disputed claim terms and that the patentee did not clearly and unambiguously limit

17  the claim scope.

### A.   "natural language"

| InfoGation's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning<br><br>- or, alternatively -<br><br>"text using generic terms" | "a language spoken and written by humans" |

23     InfoGation believes that the term "natural language" does not require construction

24  by the Court, and that it should be given its plain and ordinary meaning.  Alternatively,

25  should the Court determine that construction of "natural language" is warranted,

26  InfoGation proposes that the term be construed to mean "text using generic terms."

27     This proposed construction is wholly consistent with the '743 patent specification.

28  For example, the '743 patent states:

1
2
3
> The routing information is formatted using a natural language specification in accordance with each specific embodiment of the present invention. Generally this specification includes a plain text description for each link in the route using pre-defined generic terms such as road names and turning directions.

4  ('743 patent, col. 3, ll. 34-39).

5      The patent further provides a specific, non-limiting example of "natural language"

6  in Figure 5 and the accompanying text:

7
8
9
> FIG. 5 is a block diagram describing a natural language format that can be used to specify routes in accordance with an embodiment of the present invention. A generic designation for the natural language description is depicted in block 502. This is followed by a specific example of a formatted calculated route as shown in block 508.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



*Fig. 5*

26  ('743 patent, col. 8, ll. 60-65 & Fig. 5).

27
28

Defendants' proposed construction, "a language spoken and written by humans," appears to have been conceived solely to support their unsuccessful motion for judgment on the pleadings based on 35 U.S.C. § 101. Nowhere in the patent is the claim term limited to a language spoken and written by humans. Indeed, taken to its logical conclusion, Defendants' proposed construction suggests that in order for claim 15 to be practiced, a human must speak or write the route information. However, as indicated in the '743 patent specification, "natural language" only requires text using generic terms. Certainly, the example of natural language in Figure 5 of the '743 patent is merely text using generic terms, and not a grammatically correct narration of the desired route.

InfoGation accordingly requests that "natural language" be afforded its plain and ordinary meaning, or alternatively, "natural language" should be construed to mean "text using generic terms."

**B.    "non-proprietary"**

| InfoGation's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning<br><br>  - or, alternatively -<br><br>"conforming to standards that are in the public domain or are widely licensed" | "format that can be used with mapping databases provided by other manufacturers" |

InfoGation believes that the term "non-proprietary" does not require construction by the Court, and that it should be given its plain and ordinary meaning. Alternatively, should the Court determine that construction of "non-proprietary" is warranted, InfoGation proposes that the term be construed to mean "conforming to standards that are in the public domain or are widely licensed."

Nothing in the '743 patent suggests that the term "non-proprietary" be given anything but its plain and ordinary meaning. The '743 patent notes that in the client-server navigation systems available at that time, "all geographical data transmitted by the server is in a propriety [sic] format." ('743 patent, col. 1, ll. 62-63). In another instance, the '743 patent states:

1
2

> Another problem with the current systems is that the proprietary server cannot be used with navigation systems and mapping databases provided by other manufacturers.

3 ('743 patent, col. 2, ll. 34-36). Thus, the '743 patent mentions the presence of the

4 proprietary format of geographical data as well as the proprietary character of navigation

5 servers that existed at that time. This is a far cry from a clear intent to define the term

6 "non-proprietary," which is what is required under Federal Circuit precedent to deviate

7 from a term's plain and ordinary meaning. Yet, Defendants' proposed construction, in

8 contravention of controlling precedent, attempts to limit the definition of "non-

9 proprietary" to the '743 patent's specific discussion of proprietary servers.

10      The rationale for the inclusion of the term "non-proprietary" in the asserted claim 15

11 was to overcome the problem in existing navigation systems where client and server devices

12 made by different manufacturers were incompatible with each other. In order to resolve this

13 problem, the '743 patent dictates not only that the routing information uses a natural

14 language description, but also that the communication from the server to the client has to

15 utilize a non-proprietary format. Indeed, if routing information is formatted by a server

16 using a natural language description but is in a proprietary format, another manufacturer's

17 client device will nevertheless be incompatible with the server, despite the use of a natural

18 language description. As the '743 patent teaches in discussing a specific embodiment, the

19 transmission of data from the server to the client should utilize standard formats in order to

20 allow for the use of generic tools to increase compatibility:

21
22
23
24

> Accordingly, the web server interface module 302 interprets data streams from the server for displaying display text and/or graphics on the display screen 214. Preferably, the data streams transmitted by the server 114 are in a standard format, such as HTML, a modified version of HTML or the like. In this fashion, generic web-browsing tools can be used to interface with the web navigation server 114 of the present invention.

25 ('743 patent, col. 7, ll. 36-43).

26      Accordingly, Defendants' attempt to limit the term "non-proprietary" to its usage in a

27 single passage of the '743 patent specification should be rejected. The term should retain its

28 plain and ordinary meaning.

1    Alternatively, should the Court find that a construction of "non-proprietary" is

2  necessary, InfoGation proposes that the term be construed to mean "conforming to

3  standards that are in the public domain or are widely licensed." This is consistent with

4  the '743 patent's goal of allowing for client-server compatibility across different

5  manufacturers. This is also consistent with the ordinary meaning of "non-proprietary" in

6  the computer software field. (*See* Ex. A) (Oxford English Dictionary online, definition of

7  "non-proprietary").

8    **C.    "mapping database coupled to said navigation computer for**
      **reconstructing said optimal route from said non-proprietary, natural**
9     **language description"**

| InfoGation's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning<br><br>    - or, alternatively -<br><br>"mapping database coupled to said navigation computer used in building the optimal route from the non-proprietary, natural language description" | "mapping database coupled to said navigation computer for transforming the non-proprietary, natural language description into an optimal route displayed as part of a map" |

16    The dispute between the parties regarding the claim limitation "mapping database

17  coupled to said navigation computer for reconstructing said optimal route from said non-

18  proprietary, natural language description" appears to center on the meaning of the term

19  "reconstructing." InfoGation believes that this claim limitation does not require construction

20  by the Court, and that it should be given its plain and ordinary meaning. Alternatively,

21  should the court determine that construction of this claim limitation is warranted, InfoGation

22  proposes that the limitation be construed to mean "mapping database coupled to said

23  navigation computer used in building the optimal route from the non-proprietary, natural

24  language description." Defendants' proposed construction, with its substitution of the word

25  "transforming" for "reconstructing" and its insertion of "displayed as part of a map" should

26  be rejected.

27

28

As taught in the '743 patent, this claim limitation is directed to the process by which the client device takes the natural language description and reconstructs the route in the format required by the client:

> The routing information is formatted using a natural language specification in accordance with each specific embodiment of the present invention. Generally this specification includes a plain text description for each link in the route using pre-defined generic terms such as road names and turning directions. The client interprets this routing data and interfaces with the local mapping database to reconstruct, in the format required by the client, the optimal route from the natural language description. This is accomplished by using a mapping reconstruction algorithm stored on the client.

('743 patent, col. 3, ll. 35-45).

The '743 patent specification discusses one way to accomplish this reconstruction by finding the starting point of the route in the local mapping database and then adding each step of the route (also referred to in the '743 patent specification as a "link") to create a route data structure or "link list":

> A method that can be used by the map reconstruction module 306 to reconstruct the route (as shown in step 418 from FIG. 4) will now be described with reference to FIG. 6. The map reconstruction process 600 begins with step 602. In step 602, the process finds the starting point of the route. Typically, this starting point is listed in the first entry 504 in the natural language description 502.

> \*   \*   \*

> Once the starting point is found on the mapping database 208, the process continues with step 604. In step 604, the next link is extracted from the natural language description 505. As stated, this includes at least the street name of the next turn ("next turn street") and the type of the next turn ("turn type"). It should be noted the turn type could be specified in various ways. For example, the turn type could be specified in terms of absolute degrees, as shown in FIG. 5 or as directional indicators, such as N, NE, E, SE, S, SW, W and NW. Alternatively, the turn type could be specified as a left turn or a right turn, a left bear or a right bear, etc. Any method for describing turns can be used in alternative embodiments of the present invention.

> \*   \*   \*

> Next, in step 612, the process adds the map information to the reconstructed route. Control next passes to step 614. The objective is to construct a route data structure or "link list" which consists of all the shape points along the route.

('743 patent, col. 9, ll. 48-54, col. 10, ll. 9-21, 47-50).

1    In other words, each step along the route is extracted from the natural language

2   description and put together into a link list.  Such a process would easily be understood by a

3   person of ordinary skill in the art.  Accordingly, InfoGation believes that this claim

4   limitation does not require further construction by the Court.  If a specific construction is

5   required, InfoGation believes that the claim limitation "mapping database coupled to said

6   navigation computer for reconstructing said optimal route from said non-proprietary, natural

7   language description" should be interpreted to mean "mapping database coupled to said

8   navigation computer used in building the optimal route from the non-proprietary, natural

9   language description."

10    Defendants' proposed construction is problematic for multiple reasons.  First,

11   Defendants' use of the word "transform" suggests that the mapping database takes an active

12   role in *generating* an optimal route, when in fact that optimal route had previously been

13   determined at the server and is contained in the natural language description.

14    Second, the insertion of the language "displayed as part of a map" as part of the

15   construction has no justification.  Importantly, the '743 patent specification indicates that the

16   "displaying" of the route is separate from, and takes place after, "reconstructing" the route:

17
18    The routing information is formatted using a natural language specification in
     accordance with each specific embodiment of the present invention. Generally
     this specification includes a plain text description for each link in the route
19    using pre-defined generic terms such as road names and turning directions. The
     client interprets this routing data and interfaces with the local mapping database
20    to reconstruct, in the format required by the client, the optimal route from the
     natural language description. This is accomplished by using a mapping
21    reconstruction algorithm stored on the client.

22    ***Once the route is reconstructed, it is displayed on the display screen on the
     client navigation system, using whatever mapping database is present on the***
23    ***client.*** In this fashion, the database software used on the server is completely
     hardware and software independent from that used on the client.

24   ('743 patent, col. 3, ll. 35-51) (emphasis added).  Because the claim language of this

25   disputed claim limitation refers only to "reconstructing" and not "displaying," Defendants'

26   proposed construction is improper and should be rejected.

27

28

### D.    "optimal routes/optimal route"

| InfoGation's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning<br><br>- or, alternatively -<br><br>"recommended route(s) based on one or more criteria" | Indefinite |

InfoGation believes that the terms "optimal route" and "optimal routes" do not require construction by the Court, and should be given their plain and ordinary meaning. Alternatively, should the Court determine that construction of these terms is warranted, InfoGation proposes the terms be construed to mean "recommended route(s) based on one or more criteria."

InfoGation's proposed construction is wholly consistent with the '743 patent specification.  For example, the '743 patent states:

> *In step 408, the server connects with other databases, as necessary to obtain real-time information that is to be used in calculating an optimal route for the user.* For example, the server may connect with another server on the Internet 118 that provides *current traffic or road conditions relevant to the proposed route.*  Alternatively, such information may reside in one or more resources directly controlled by the navigation server 114, such as the database 116, or the user profile 117.

> \*    \*    \*

> *In step 408, the server 114 optionally reads or requests user preference data for calculating the route. For example, the user may want to avoid toll roads, dirt roads or major highways.* The server 114 can request this information from the user in real-time. Alternatively, such information may be pre-stored from previous sessions and is accessible by the server 114, from the database 117. Many known methods can be used to obtain user specific information, such as the use of cookies and the like. Such methods would be apparent to persons skilled in the relevant art(s).

('743 patent, col. 7, l. 66- col. 8, l. 7, col. 8 ll. 26-36) (emphasis added).  Thus, a person of ordinary skill in the art would understand the '743 patent as defining an "optimal route" as a route that is recommended based on one or more criteria, including but not limited to current travelling conditions, such as traffic and road conditions, and user preferences, such as a user's preference for avoiding toll roads, dirt roads or major highways.

1    Defendants' contention that the terms "optimal route" and "optimal routes" are

2    indefinite appears to be based on a superficial reading of the claim language.  This

3    position is not only unreasonable, but also disregards well-established precedent.  "[A]

4    claim is not indefinite merely because its scope is not ascertainable from the face of the

5    claims." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1342 (Fed. Cir.

6    2003).  Rather, a party seeking to prove that a patent claim is invalid for indefiniteness

7    "must demonstrate by clear and convincing evidence that one skilled in the relevant art

8    could not discern the boundaries of the claim based on the claim language, the

9    specification, the prosecution history, and the knowledge in the relevant art." *Teva*

10   *Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363, 1368 (Fed. Cir. 2013)

11   (quoting *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1366 (Fed. Cir. 2011)).  If

12   one having ordinary skill in the art is able to understand the claim after reading the claims

13   and specification, the claim is valid. *See Energizer Holdings, Inc. v. Int'l Trade Comm'n*,

14   435 F.3d 1366, 1370 (Fed. Cir. 2006).

15   InfoGation submits that a person of ordinary skill in the art would readily discern

16   the meanings of the terms "optimal route" and "optimal routes" based on the knowledge

17   in the relevant art alone, and that the examples provided in the specification of the '743

18   patent further support the understanding that would be had from the knowledge in the art.

19   InfoGation accordingly requests the terms "optimal route" and "optimal routes" be

20   afforded their plain and ordinary meaning, or alternatively, the terms "optimal route" and

21   "optimal routes" should be construed to mean "recommended route(s) based on one or

22   more criteria."

23

24

25

26

27

28

IV.   **CONCLUSION**

For the foregoing reasons, the Court should adopt InfoGation's proposed constructions for the disputed claim terms.

DATED: April 7, 2017                    KIRBY & KIRBY LLP,


By: /s/ *Michael L. Kirby*
      Michael L. Kirby
      Heather W. Schallhorn
      Attorneys for Plaintiff InfoGation Corp.

# EXHIBIT A



DICTIONARY    THESAURUS    GRAMMAR ⌄    EXPLORE ⌄    BLOG        SIGN IN

*Powered by* OXFORD

**English** Oxford *Living* Dictionaries

DICTIONARY ⌄    non-proprietary    ⌨ ⌄    🔍

Home › British & World English › non-proprietary

Definition of *non-proprietary* in English:

  

# non-proprietary 🔊

## ADJECTIVE

1   Not registered or protected as a trademark or brand name; generic.

 + Example sentences    + Synonyms

  1.1   (especially of computer hardware or software) conforming to standards that are in the public domain or are widely licensed.

      + Example sentences

**Pronunciation** ?
**non-proprietary** 🔊

---



WORD OF THE DAY
**seel** 🔊
VERB



The Oxford Dictionaries Word of the Year 2016 is...



Our nationwide competition to find the most talented young writers!



Quiz: ghost or cat?



---

 DICTIONARY ▾    non-proprietary    ⌨ ⌄    🔍        ≡ MENU