Fred I. Williams (admitted *pro hac vice*)
   (fwilliams@velaw.com)
Mario Apreotesi (admitted *pro hac vice*)
   (mapreotesi@velaw.com)
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568
Tel: (512) 542-8400 / Fax: (512) 542-8612

Todd E. Landis (admitted *pro hac vice*)
   (tlandis@velaw.com)
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX  75201-2975
Tel: (214) 220-7700  / Fax: (214) 220-7716

David J. Tsai (SBN 244479)
   (dtsai@velaw.com)
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA  94105
Tel: (415) 979-6900 / Fax: (415) 651-8786

*Attorneys for Defendants*
HTC CORPORATION and
HTC AMERICA, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

INFOGATION CORP.,

                    Plaintiff,

            vs.

HTC CORPORATION and
HTC AMERICA, INC.,

                    Defendants.

Case No. 3:16-cv-01902-H-JLB

## <u>DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................1

II.   PATENT BACKGROUND ...................................................................2

III.  ARGUMENT FOR DISPUTED CLAIM TERMS.................................4

    A.    "non-proprietary" ..........................................................................4

        1.    Because "non-proprietary" can have several meanings and the parties dispute its proper meaning in the context of the patent, the Court cannot simply adopt "plain and ordinary meaning" but must construe the term ...............................................5

        2.    Defendants' proposal gives "non-proprietary" its proper meaning in the context of the patent and follows from repeated statements in the specification and file history ...............5

        3.    The Court should also reject Plaintiff's alternate construction because it introduces new concepts into the claim language that have no support in the intrinsic record. .........9

    B.    "natural language"........................................................................10

        1.    Defendants' proposal comports with the ordinary meaning of "natural language" and the specification ...............................11

        2.    Plaintiff's proposals are inconsistent with the term's customary, technical meaning and would confuse a jury .............12

    C.    "mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description" ...................................................14

        1.    "reconstructing" means "rebuilding"...........................................16

        2.    "reconstructing said optimal route from said non-proprietary, natural language description" means "rebuilding the non-proprietary, natural language description into an optimal route displayed as part of a map".....................................17

    D.    "optimal route" / "optimal routes"...........................................20

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Abdou v. Alphatee Spine, Inc.,*

5

   No. 12-cv-1804 BEN, 2014 WL 6611422 (S.D. Cal. Nov. 19, 2014)........................22

6

*Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.,*

7

   533 F.3d 1362 (Fed. Cir. 2008) .......................................................................9

8

*Eon Corp. IP Holdings v. Silver Spring Networks, Inc.,*

   815 F.3d 1314 (Fed. Cir. 2016) ...................................................................6, 7

9

*Funai Elec. Co. v. Daewoo Elecs. Corp.,*

10

   616 F.3d 1357 (Fed. Cir. 2010) ............................................................. 13, 15

11

*Halliburton Energy Servs., Inc. v. M-I LLC,*

12

   514 F.3d 1244 (Fed. Cir. 2008) ....................................................................25

13

*Imperium (IP) Holdings, Inc. v. Apple, Inc.,*

14

   920 F. Supp. 2d 747 (E.D. Tex. 2013) ...........................................................26

15

*In re Varma,*

16

   816 F.3d 1352 (Fed. Cir. 2016) ....................................................................18

17

*Intellectual Venture I LLC v. AT&T Mobility LLC,*

   No. CV 13-1668-LPS, 2016 WL 4363485 (D. Del. Aug. 12, 2016) ...........................24

18

*Interval Licensing LLC v. AOL, Inc.,*

19

   766 F.3d 1364 (Fed. Cir. 2014) .............................................................. 22, 25

20

*Medrad, Inc. v. MRI Devices Corp.,*

21

   401 F.3d 1313 (Fed. Cir. 2005) .....................................................................6

22

*Miken Composites, L.L.C. v. Wilson Sporting Goods Co.,*

23

   515 F.3d 1331 (Fed. Cir. 2008) ....................................................................13

24

*Nautilus, Inc. v. Biosig Instruments, Inc.,*

25

   134 S. Ct. 2120 (2014)........................................................................ 22, 25

26

*Netgear, Inc. v. Ruckus Wireless, Inc.,*

   5 F. Supp. 3d 592 (D. Del. 2013) ..................................................................23

27

28

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Nystrom v. TREX Co., Inc.,*
   424 F.3d 1136 (Fed. Cir. 2005) ...........................................................................6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.,*
   521 F.3d 1351 (Fed. Cir. 2008) ........................................................... 5, 14, 17

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ...................................................................6, 12

*Power-One, Inc. v. Artesyn Techs., Inc.,*
   599 F.3d 1343 (Fed. Cir. 2010) .........................................................................14

*Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC,*
   824 F.3d 999 (Fed. Cir. 2016) ...........................................................................20

*Starhome GmbH v. AT&T Mobility LLC,*
   743 F.3d 849 (Fed. Cir. 2014) ...........................................................................12

*Sybase, Inc. v. Data Retrieval Technology, LLC,*
   No. C 08-5481-VRW, Dkt. No. 146 (N.D. Cal. Nov. 8, 2010)..................................24

**OTHER AUTHORITIES**

'743 Patent..................................................................................................... passim

1   **I.      <u>INTRODUCTION</u>**

2         The '743 Patent's claimed invention employs a server to calculate a route and to

3   send that route in a "non-proprietary, natural language" description to a client device.

4   Claim 15, the only asserted claim, recites a server calculating routes "formatted using a

5   non-proprietary, natural language description" and a client device "reconstructing" the

6   route "from said non-proprietary, natural language description."  The specification, in

7   turn, distinguishes prior art where "data transmitted by the server is in a propriet[ar]y

8   format," as opposed to the "present invention," which uses a "natural language"

9   description that can be "used in conjunction with any type of mapping database."  '743

10  Patent at 1:62-63, 3:12-14, 3:23-26.  The emphasis on the use of "non-proprietary,

11  natural language" is also seen in the prosecution history, where the applicants amended

12  the claims to require a "non-proprietary" description to distinguish prior art using a

13  "propriet[ar]y format" that could not "be used with navigation systems and mapping

14  databases provided by other manufacturers."  Ex. A (3/5/2001 Amendment) at 11-12,

15  20-21 (INFO_000092-93, 102-103).

16        For each of the four disputed terms, Defendants HTC Corporation and HTC

17  America, Inc. (together "Defendants"), propose constructions consistent with this

18  claimed invention:

19      1.  For "non-proprietary," Defendants' construction of "format that can be used

20          with mapping databases provided by other manufacturers" provides the proper

21          meaning for this term as understood by one of skill in the art in the context of

22          the claim language, specification, and prosecution history.

23      2.  For "natural language," Defendants' construction of "a language spoken and

24          written by humans" comports with the examples of "natural language" in the

25          specification and is also the term's customary meaning.

26      3.  For "mapping database coupled to said navigation computer for reconstructing

27          said optimal route from said non-proprietary, natural language description,"

28          Defendants' construction of "mapping database coupled to said navigation

1                                                           Case No. 16-cv-1902-H-JLB

computer for rebuilding the non-proprietary, natural language description into an optimal route displayed as part of a map" provides the proper construction for the "reconstructing" limitation in the context of the intrinsic evidence.

4. The term "optimal route(s)" is indefinite because the '743 Patent fails to provide any criteria to determine the scope of "optimal routes" and in particular, what it means for a route to be "optimal."

Plaintiff InfoGation Corp., meanwhile, proposes "plain and ordinary meaning" for every term. But for each term, simply adopting "plain and ordinary meaning" fails to inform the jury of the term's proper meaning to a person of ordinary skill in light of the intrinsic evidence and also fails to resolve the parties' dispute. For each term, Plaintiff also provides an alternate construction (presumably the construction it believes is the "plain and ordinary meaning"). But those alternatives are divorced from the ordinary meaning of the terms and the context of the claimed invention. Plaintiff's alternatives also highlight the disputes between the parties and the need for the Court to provide a construction that specifies the meaning each term should have. Because Defendants' constructions provide the proper meaning for the disputed claim terms as they would be understood by one of skill in the art when read in light of the intrinsic record, they should be adopted.

## II.   **PATENT BACKGROUND**

The '743 Patent is generally directed to a mobile computer navigation system where a "client navigation system" "requests a route" from a "navigation server." '743 Patent at Abstract. Claim 15 is the only asserted claim and recites:

15. A mobile navigation system comprising:

a navigation computer;

a wireless transceiver coupled to said navigation computer for connecting with a navigation server, said navigation server for calculating optimal routes based on real-time information, said optimal routes being formatted using a non-proprietary, natural language description;

a mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description; and

a display screen coupled to said navigation computer for displaying said optimal route using said mapping database.

*Id.* at 17:9-22.

The specification notes that prior art navigation systems at the time, like the "MONET system," sent data from the server to the client "in a propriet[ar]y format. That is, downloaded information . . . [is] specific to the particular mapping database used on the client." *Id.* at 1:62-67. Because the data is in a proprietary format, "the mapping database used by the client and server must be identical. If there is a mismatch . . . the client cannot properly interpret the geographical data downloaded from the server and the system will fail." *Id.* at 2:3-8.

The specification contends that its purported "invention alleviates many of the failings of the prior art" by using a "natural language to describe optimal routing information," which "is transmitted from the server to the client." *Id.* at 2:45-46, 3:11-14, 3:21-23. The specification explains that the "natural language description" can be used "in conjunction with any type of mapping database software." *Id.* at 3:23-26. Figure 5 of the specification provides the only concrete example of what the patent means by a "natural language" for route directions:



*Fig. 5*

As illustrated in Figure 5, the natural language description sent from the server to the client is in English and includes a starting point (e.g., "SEA WORLD DRIVE,

SAN DIEGO, CA") and end point (e.g., "SOUTH RODEO DRIVE, BEVERLY HILLS, CA"), that "includes such information as street names and city names." *Id.* at 8:66-9:3.

The specification explains how, after receiving the natural language description of the route from the server, the client device "reconstruct[s], in the format required by the client, the optimal route." *Id.* at 3:39-42. In particular, the client's "navigation computer" "reconstruct[s] and display[s] the route 508 using the local mapping database 208," which "store[s] local mapping data." *Id.* at 6:40-41, 9:40-42. Reconstruction works by processing each of the "links" in the natural language description and "construct[ing] a route data structure or 'link list' which consists of all the shape points along the route." *Id.* at 10:49-50; *see also id.* at Fig. 6, 10:9-40. This "link list of shape points . . . define[s] part of the route" and "can then be used to display and [] track a vehicle['s] progression along the route." *Id.* at 10:54-55, 11:9-14. The specification also explains that once the "last link 505n has been processed," "the map is highlighted in accordance with the reconstructed routing information" and "[t]he highlighted map is displayed." *Id.* at 10:25-30.

## III. ARGUMENT FOR DISPUTED CLAIM TERMS

### A. *"non-proprietary"*

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| *Plain and ordinary meaning.*<br>- or -<br>Alternative Construction:<br>*conforming to standards that are in the public domain or are widely licensed* | *format that can be used with mapping databases provided by other manufacturers* |

Defendants propose construing "non-proprietary" as "format that can be used with mapping databases provided by other manufacturers." This construction follows from both the specification and file history, which consistently emphasize that a "non-proprietary" description in the context of the '743 Patent is a description that can be used with mapping databases from other manufacturers. Plaintiff proposes that

the Court simply adopt the "plain and ordinary meaning" for this term, or alternatively, "conforming to standards that are in the public domain or are widely licensed." Plaintiff's proposals are flawed for two reasons: (1) "non-proprietary;" is a term with a meaning that is context-dependent, and adopting "plain and ordinary meaning" fails to properly define the term in light of the context provided by the intrinsic evidence; and (2) its alternate construction introduces concepts of "standards" and "widely licensed" that are foreign to the claimed invention and find no support in the intrinsic record.

        **1.**    **Because "non-proprietary" can have several meanings and the parties dispute its proper meaning in the context of the patent, the Court cannot simply adopt "plain and ordinary meaning" but must construe the term**

     "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008); *Eon Corp. IP Holdings v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318-20 (Fed. Cir. 2016) ("simply rejecting one proposed construction does not mean that . . . giv[ing] terms their plain and ordinary meaning resolves the relevant dispute"). Here, the term "non-proprietary" is subject to several possible definitions as shown by the parties' differing definitions for this term. Defendants propose construing it as "format that can be used with mapping databases provided by other manufacturers." Plaintiff alternatively proposes construing "non-proprietary" as "conforming to standards that are in the public domain or widely licensed." The parties thus disagree on the plain meaning of "non-proprietary" in the context of the claimed invention. In this situation under *O2 Micro*, the Court must resolve the parties' dispute and provide a specific construction for the term.

        **2.**    **Defendants' proposal gives "non-proprietary" its proper meaning in the context of the patent and follows from repeated statements in the specification and file history**

The ordinary meaning of a claim term is not "the meaning of the term in the abstract." *Eon*, 815 F.3d at 1320 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc)).  Instead, "the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.*  A party is, therefore, 'not entitled to a claim construction divorced from the context of the written description and prosecution history.'" *Id.* (quoting *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005)).  "Ordinary meaning is not something that is determined 'in a vacuum.'" *Id.* (quoting *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)).  "To the contrary, 'a word describing patented technology takes its definition from the context in which it was used by the inventor.'" *Id.* (citations omitted).

Defendants' construction of "non-proprietary"—"format that can be used with mapping databases provided by other manufacturers"—provides the term with its proper meaning in the context of the '743 Patent.  It aligns with the language of Claim 15 where "non-proprietary" is used to describe the operations of the "navigation server" and the "mapping database."  The "navigation server" first formats optimal routes "using non-proprietary, natural language description."  The mapping database then reconstructs "said optimal route from said non-proprietary, natural language description."  The import of this claim language is that the invention is intended for use with a variety of mapping databases.  It accomplishes this by using "non-proprietary" descriptions of optimal routes.

Defendants' construction also aligns with the specification, which distinguishes prior art systems based on this principle.  The specification asserts that in "current [prior art] systems, all geographical data transmitted by the server is in a propriet[ar]y format." *Id.* at 1:62-67.  Because all data is in a proprietary format, "the mapping database used by the client and server must be identical" to avoid "mismatches" between the formats used in the two databases. *Id.* at 2:3-8.  Thus, the "problem with the current systems is that the proprietary server ***cannot be used with navigation***

*systems and mapping databases provided by other manufacturers*." *Id.* at 2:35-37 (emphasis added).

To enable clients and servers to interoperate with mapping databases from different manufacturers, the specification describes the claimed invention as using optimal routes in a "non-proprietary" description. Specifically, the specification states that the claimed invention uses "a natural language to describe optimal routing information *that can be interpreted by a variety of clients* with minimal software additions." *Id.* at 3:11-14 (emphasis added). By using such a "non-proprietary" description, the "present invention can be used with *any mapping database* installed on the client navigation system" because the "server is hardware and software independent from the client" and, thus, "navigation systems from *any vendor* can be easily adapted to work with the server of the present invention." *Id.* at 2:48-50, 3:8-10 (emphasis added). According to the specification, "[t]he natural language description is completely independent from the local mapping database software used on the clients, and *can therefore be used in conjunction with any type of mapping database* software." *Id.* at 3:23-27 (emphasis added).

The file history further supports Defendants' construction as it highlights the meaning ascribed to "non-proprietary" within the context of the claimed invention. When originally filed, Claim 15 did not have the limitation "non-proprietary"; it required only that the route be in a "natural language description." Ex. B, 1/6/1999 Original Appl. at 27 (INFO_0000033). The PTO rejected these claims in view of a prior art reference, U.S. Patent No. 5,948,040 ("Delorme"). Ex. C, 10/3/2000 Office Action at 2 (INFO_0000071). In response, the applicants amended Claim 15 to add "non-proprietary." Ex. A, 3/5/2001 Amendment at 20-21 (INFO_0000102-103). The applicants explained that the addition of "non-proprietary" was necessary to distinguish Delorme because Delorme used a "proprietary format" that could not be used with "databases provided by other manufacturers:"

DeLorme is no different than the navigation systems distinguished in the Background of the Invention of the present application in that in these systems, all geographical data transmitted by the server is in a propriet[ar]y format so that the downloaded information used to describe geographical data, such as point-of-interest addresses and detailed map data, includes data points, indices and the like that are **specific to the particular mapping database used on the client.**

….

A further problem with DeLorme's TRIPS navigation system is that **the proprietary server cannot be used with navigation systems and mapping databases provided by other manufacturers**.  The client software must be frequently customized and very specific mapping software must be used.

*Id.* at 11-12 (INFO_0000091-92) (emphasis added).

The applicants then explained that the claimed invention employed a "non[-]proprietary" description that could be "used with any mapping database:"

In the claimed method and navigation system, **formatting the optimal route into a nonproprietary, natural language description** and downloading the non-proprietary, natural language description to the client **allows the navigation system to be used with any mapping database installed on the client navigation system**.

*Id.* at 12 (INFO_0000092) (emphasis added).

"'[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention.'"  *Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1369 (Fed. Cir. 2008).  In particular, "the prosecution history may be given substantial weight in construing a term where that term was added by amendment."  *Id.*  Accordingly, the applicant's remarks concerning Delorme based on the amendment adding "non-proprietary" reinforces that the term's proper meaning in the context of the claimed invention is a "format that can be used with mapping databases provided by other manufacturers."

Plaintiff has already conceded that "non-proprietary" means a format that can be used with mapping databases provided by other manufacturers.  In opposing

Defendants' Rule 12(c) motion, Plaintiff stated that the claimed invention uses a "non-proprietary" description for routes to avoid "database mismatch failures."  D.I. 50 at 1.  Plaintiff argued that "at the time of the invention, geographical data provided by the server to the client in navigation systems was in a proprietary format that was specific to the particular mapping database used by the client."  *Id.* at 2.  Plaintiff then contrasted the claimed invention, stating:  "the non-proprietary, natural language description, by being in a format independent of the local mapping database software, not only avoided the database mismatch failures that plagued earlier client-server navigation systems, but also expanded the ability of navigation servers and clients to be able to be used together."  *Id.* at 9.  At the hearing on the motion, Plaintiff similarly stated that the prior art suffered from an "incompatibility" problem where "if you have a server from one ***manufacturer*** and [] a client device that was from another ***manufacturer***.  There would typically be no way for those computers to be able to talk with each other."  Ex. D at 27:12-18 (emphasis added).  Plaintiff stated that "Claim 15 is directed to addressing this database mismatch problem" by having the server generate a route "in a non-proprietary format."  *Id.* at 27:19-25.

Given the intrinsic evidence and Plaintiff's own admissions, there is little dispute that "non-proprietary" in the context of the '743 patent should be construed to mean "format that can be used with mapping databases provided by other manufacturers."  Defendants' construction should therefore be adopted.

### 3.  The Court should reject Plaintiff's alternate construction because it introduces new concepts into the claim language that have no support in the intrinsic record.

As an alternative to "plain and ordinary" meaning (or perhaps as its interpretation of the plain and ordinary meaning), Plaintiff proposes to construe "non-proprietary" as "conforming to standards that are in the public domain or are widely licensed."  Plaintiff's alternative is incorrect because it finds no support in the intrinsic evidence, which never uses phrases like "standards," "public domain," "widely licensed," or their synonyms in describing "non-proprietary."  Further, simply because

something is widely licensed does not mean it is non-proprietary.  For example, software such as Windows 10 and Adobe Acrobat are widely licensed, but the programs are still proprietary to Microsoft and Adobe.  Similarly, just because something is standardized or in the "public domain" does not mean it is non-proprietary.  Two navigation systems could use English, which is a language that conforms to standards that are in the public domain.  But each system could still format English-language directions using a proprietary description that is incompatible with the other system.  One navigation system could put turn directions before distances (e.g., "turn right in five miles"), while another navigation system puts distances before turn directions (e.g., "in five miles, turn right").  These two descriptions would be incompatible and thus not "non-proprietary" as that term is used in the context of the patent.

Additionally, Plaintiff's alternate proposal introduces concepts surrounding "standards" and "widely licensed" with which the jury may not be familiar.  Those concepts also have no basis in the context of the intrinsic evidence, which never describes route descriptions as conforming to standards or being widely licensed.  Thus, Plaintiff's alternate proposal is unsupportable and risks confusing the jury.

Plaintiff's proposals for "non-proprietary" should be rejected, and the Court should adopt Defendants' construction.

### B.   *"natural language"*

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| *Plain and ordinary meaning.* <br> - or - <br> Alternative Construction: <br> *text using generic terms* | *a language spoken and written by humans* |

The parties dispute whether the term "natural language" should:  (1) be construed consistently with the specification and the commonly understood meaning in the art of "a language spoken and written by humans" (as Defendants propose) or

(2) not be construed at all or alternatively construed using a confusing definition of "text using generic terms" (as Plaintiff proposes).

### 1.   Defendants' proposal comports with the ordinary meaning of "natural language" and the specification

Defendants' proposal of "a language spoken and written by humans" follows from the commonly understood meaning of "natural language" in computer science. Indeed, technical computer dictionaries from around the filing of the '743 Patent in 1999 all consistently define "natural language" to mean a language commonly used by humans, as opposed to a computer or programming language:

- "natural language n.  A language spoken or written by humans, as opposed to a programming language or a machine language."  Ex. E, Microsoft Computer Dictionary 305 (4th ed. 1999).

- "natural language (Comp)[.]  Any naturally evolved human language."  Ex. F, Chambers Dictionary Of Science And Technology 772 (1995).

- "natural language[.]  In computer science, human language as opposed to a programming language or machine language."  Ex. G, Dictionary of Computer Words 185 (Rev. ed. 1995).

- "natural language (software)[.]  A language whose rules are based on usage rather than being pre-established prior to the language's use.  Examples include German and English."  Ex. H, IEEE 100: The Authoritative Dictionary of IEEE Standard Terms 721 (7th ed. 2000).

Although dictionaries are generally given less weight than intrinsic evidence, dictionaries are given more weight here, where the term has a "widely accepted meaning" and, thus, dictionaries may "assist in understanding the commonly understood meaning of words."  *See Phillips*, 415 F.3d at 1314, 1322 (en banc).  In *Starhome GmbH v. AT&T Mobility LLC*, for example, the Federal Circuit relied on technical dictionaries to construe "intelligent gateway" because "'gateway' had a well-understood meaning in the art at the time the patentees filed the application that led to the [asserted] patent."  743 F.3d 849, 856-58 (Fed. Cir. 2014).

Dictionaries can also be used if "nothing in the claims or specification indicates, explicitly or implicitly, that the inventor used the [disputed] term in a novel way or intended to impart a novel meaning to it." *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1337 (Fed. Cir. 2008). Here, the specification uses the customary definition of "natural language" as understood by a person of ordinary skill. Indeed, the specification only provides one example of "natural language" in Figure 5 and related text, where start and end locations are indicated by "SEA WORLD DRIVE, SAN DIEGO, CA (HEADING 90 DEG.) TO SOUTH RODEO DRIVE, BEVERLY HILLS, CA" and each "link" along the route is indicated by phrases such as "SANTA MONICA (HIGHWAY 2) 45 DEG. 2.9 MILES." '743 Patent at Fig. 5; *see also id.* at 8:66-9:10. The specification explains that such a "natural language description is completely independent from the local mapping database software." *Id.* at 3:24-26. Thus, the specification's description and example of putting route descriptions in English comports with the customary meaning of "natural language" as referring to languages written and spoken by humans, as opposed to a computer or programming language.

### 2. Plaintiff's proposals are inconsistent with the term's customary, technical meaning and would confuse the jury

Plaintiff's proposal of "plain and ordinary meaning" should be rejected because it would fail to provide the jury with guidance as to the meaning of a technical term, "natural language." One goal of claim construction to provide an "explanation [that] aids the court and the jury in understanding the term as it is used in the claimed invention." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1366 (Fed. Cir. 2010). "The terms, as construed by the court, must ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims." *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348-49 (Fed. Cir. 2010) (citations and quotations omitted). Adopting "plain and ordinary meaning" would fail to meet this goal. "Natural language" is a technical term in computer science with a customary

1   meaning to a person of ordinary skill, as confirmed by several computer dictionary

2   definitions.  Without a construction by the Court, the jury may apply an incorrect

3   definition—such as one that encompasses computer or programming languages—- or

4   simply be at a loss as to the term's meaning.

5         Plaintiff offers an alternative construction of "natural language" as "text using

6   generic terms," which conflicts with Defendants' proposal.  There is thus a dispute

7   about the "ordinary" meaning of "natural language," which the Court must resolve by

8   providing a specific construction for the term.  *See O2 Micro*, 521 F.3d at 1361-62.

9   Plaintiff's alternative should be rejected for three reasons.

10         First, Plaintiff's alternative contradicts the customary meaning of "natural

11   language."  No dictionaries define "natural language" as "text using generic terms";

12   they instead define "natural language" to mean human languages, as opposed to

13   computer or programming languages.  Plaintiff's alternative of "text using generic

14   terms," however, could encompass computer or programming languages, which are

15   written in "text" and may use "generic terms."  The specification does not define or

16   suggest a definition of "natural language" different from its customary meaning.  And

17   the specification's only example of a "natural language" (i.e., Figure 5) is in English, a

18   human language—not a computer language.

19         Second, although the specification sometimes uses "text" and "generic terms,"

20   in the context of "natural language," it never uses these words to actually **define** what

21   "natural language" means.  For example, column three of the specification states: "The

22   routing information is formatted using a natural language specification . . . **Generally**

23   this specification **includes** a plain text description for each link in the route using

24   pre-defined generic terms such as road names and turning directions."  '743 Patent at

25   3:34-40 (emphasis added); *see also id.* at Abstract.  In that sentence, "text" and "generic

26   terms" are simply two exemplary features of the "natural language **specification**,"

27   they are not terms that define the disputed phrase, "natural language."  Similarly, that

28   sentence only says that "[g]enerally," the natural language includes "text" and "generic

terms."  "Generally" is a permissive phrase, further supporting that "text" and "generic terms" are exemplary features of the "natural language specification," rather than definitional requirements of "natural language."  Moreover, Plaintiff's proposal omits the more limiting and essential aspects in the sentence in column 3, including that "each link in the route us[e] pre-defined generic terms" and that the "generic terms" refer to "road names and turning directions."

Third, Plaintiff's proposal is vague and would confuse rather than help the jury understand what "natural language" means.  Claim construction is intended to "aid[] the court and the jury in understanding the term as it is used in the claimed invention." *Funai*, 616 F.3d at 1366.  Here, Plaintiff's proposal of "text using generic terms" adds significant ambiguity to the term it purportedly defines, "natural language."  In particular, it is unclear what "generic terms" means and whether it could encompass syntax used in computer or programming languages, contrary to the commonly understood meaning of "natural language."  Adopting Plaintiff's proposal would inevitably cause future disputes about what "generic terms" means.

Because Defendants' proposed construction of "natural language" comports with its ordinary, customary meaning and the specification, while Plaintiff's proposal is unsupportable and confusing, Defendants' proposal should be adopted.

**C.** ***"mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description"***

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| *Plain and ordinary meaning.*<br>- or -<br>Alternative Construction:<br>*mapping database coupled to said navigation computer used in building the optimal route from the non-proprietary, natural language description* | *mapping database coupled to said navigation computer for rebuilding[1] the non-proprietary, natural language description into an optimal route displayed as part of a map* |

For the phrase, "mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description," the parties present two disputes.  First, the parties dispute whether the word "reconstructing" within the disputed phrase means (1) "rebuilding," which is Defendants' proposal and the term's customary meaning, or (2) "plain and ordinary meaning" or alternatively, "building," as Plaintiff proposes.  Second, the parties dispute whether through "reconstructing" the optimal route is in a graphical format displayed as part of a **map**, rather than as text.  Because the intrinsic record is clear that "reconstructing" results in a graphical representation of the route on a map, Defendants propose that the disputed phrase be construed as "mapping database coupled to said navigation computer for rebuilding the non-proprietary, natural language description into an optimal route **displayed as part of a map**."  Plaintiff, meanwhile, proposes "plain and ordinary meaning," which fails to resolve the parties' dispute as to whether the reconstructed "optimal route" must be in a graphical format on a map or, alternatively, that the words "for reconstructing" should simply be replaced by a broader phrase "used in building."

---

[1] Defendants have modified their proposal for this term by substituting the word "rebuilding" for the term "transforming," which was in Defendants' proposal in the parties' prehearing claim construction charts. D.I. 49-1, 49-2. The modification clarifies that the parties' dispute is not with the word "transforming," but whether "reconstructing" can mean "building" (as Plaintiffs propose) and whether the disputed phrase requires that the reconstructed "optimal route" be "displayed as part of a map," rather than displayed as text.

### 1.   "reconstructing" means "rebuilding"

Like the term "non-proprietary," the parties dispute the proper ordinary meaning of the term "reconstructing" as used in the larger disputed phrase.  Plaintiff proposes that the term be given its "plain and ordinary meaning," but then alternatively suggests that it means "used in building."  Defendants, on the other hand, propose that "reconstructing" means "rebuilding."  Because a dispute exists as to the proper "ordinary" meaning of this term, the Court must resolve the dispute and provide a specific construction for the term.  *See O2 Micro*, 521 F.3d at 1361-62.

"Reconstructing" has a well-understood meaning:  "to construct **again**" or "to establish or assemble **again**."  Ex. I, Merriam-Webster's Collegiate Dictionary 997 (10th ed. 1999) (emphasis added).  Thesauruses identify "reconstructing" as synonymous with "rebuilding."  Ex. J, Roget's International Thesaurus 1165 (4th Ed. 1977).  "Reconstructing" does not mean "building" as proposed by Plaintiff.

The '743 Patent is also clear that "reconstructing" cannot mean "building."  The term "building" appears only once in the patent, in unasserted Claim 3, which recites:

> 3. The method of claim 2, wherein said **step of reconstructing includes the steps of**:
> searching said local mapping database for a closest match of street name and said turning orientation for each of said links; and
> **_building the optimal route_** by combining each of said closest matches from said searching step.

Claim 3 thus recites that "building" is only one of two sub-steps within the step of "reconstructing."  Plaintiff's proposal therefore cherry-picks only the verb "building" from Claim 3 to construe "reconstructing" in Claim 15.  Plaintiff entirely omits the first sub-step of "searching . . ." and it omits the other limitations in the "building" sub-step, such as "combining each of said closest matches from said searching step."  Because a term that appears in multiple claims in the same patent is presumed to have the same meaning across all claims, *In re Varma*, 816 F.3d 1352, 1363-64 (Fed. Cir. 2016), "reconstructing" should have the same meaning in Claim 3 and Claim 15.

1    Further, Claim 3 is consistent with Defendants' proposal of "rebuilding" because the

2    "building" sub-step does not build an optimal route from scratch but instead builds it

3    from existing street names and turning orientations that were the "closest matches"

4    found in the "searching" sub-step.

5         In light of both the well-understood meaning of "reconstructing" as

6    "rebuilding" and its use in the context of the patent, Plaintiffs' proposal that

7    "reconstructing" be construed as "building" should be rejected.

8         **2.    "reconstructing said optimal route from said non-proprietary, natural language description" means "rebuilding the non-proprietary, natural language description into an optimal route displayed as part of a map"**

9

10

11        The intrinsic record, as confirmed by extrinsic sources, makes clear that

12   "reconstructing" in the context of the patent refers to the process of taking the "non-

13   proprietary, natural language description" of a route and then rebuilding it into a

14   graphical representation of that route for display on a map.  The '743 Patent uses

15   "reconstructing" to refer to rebuilding the "non-proprietary, natural language

16   description" of a route into a graphical representation on a map.  The Summary of the

17   Invention describes how, after receiving a route, the "client interprets this routing data

18   and interfaces with the local mapping database ***to reconstruct***" the optimal route and

19   that "[t]his is accomplished by using a ***mapping reconstruction algorithm*** stored on

20   the client."  *Id.* at 3:34-45 (emphasis added).  "Once the route is reconstructed, it is

21   displayed."  *Id.* at 3:46-48.  The Detailed Description repeats that "reconstructing" is

22   the process of creating a graphical representation of the route on a map.  The

23   components involved in the reconstruction process (depicted in Figures 2 and 3

24   below) include a "map reconstruction module," "local mapping database," and "map

25   display software."  After receiving route data in a natural language, "map

26   reconstruction module 306 . . . interprets the route data and reconstructs, in the format

27   required by the map display software 209, the optimal route calculated by the server

28   114, using the local mapping database 208," which "is used to store local mapping

data." *Id.* at 6:40-41, 7:53-57.  Then, "the reconstructed mapping data is displayed, by the map display software 209, on the display screen 214." *Id.* at 7:57-59; *see also id.* at 6:4-6 ("geographical maps from the mapping database 208 are displayed on the display screen").



The specification's only embodiment of an algorithm for "reconstructing" thus confirms that the reconstructing process results in a graphical depiction of a route on a map.  In connection with Figure 6, the specification describes the reconstruction function as processing links in the "natural language description" of the route.  *Id.* at Fig. 6, 10:9-31.  After all links are processed, a "link list of shape points, which define part of the route," is constructed.  *Id.* at 11:6-8.  Using this "link list of shape points," a "map is highlighted in accordance with the reconstructed routing information," and the "highlighted map is displayed."  *Id.* at 10:27-31.  Further, the "link list of shape points" can be "used to display and [] track a vehicle progression along the route," which is depicted in Figures 10a and 10b, excerpted below.  *Id.* at 11:9-11.  As shown, the reconstructed route is displayed in a graphical format on a map, rather than in a text format.  *See id.* at 15:1-20; *see also id.* at 7:17-19 (the user's "current location is overlaid on a map from the mapping database 208 and is displayed").



Thus, when summarizing the claimed invention and describing specific embodiments, the specification consistently explains that "reconstructing" refers to rebuilding a natural language description of a route into a graphical representation of that route on a map.  In cases where, as here, every embodiment of the specification similarly discloses a particular feature, the Federal Circuit has held that it is appropriate to construe the claims to require that feature.  In *Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC*, for example, the Federal Circuit construed "communication path" to be limited to wired communications (and to exclude wireless communications) because "every embodiment described in the specification utilizes a telephone wire, and . . . [t]hough these statements do not expressly exclude wireless communications from the meaning of 'communications path,' they do not include it, and they discourage that understanding."  824 F.3d 999, 1003-04 (Fed. Cir. 2016).

The specification's disclosure that routes are rebuilt to be displayed graphically on maps is reinforced by the claim language.  The disputed phrase recites that the "mapping database" is used for "reconstructing."  Claims 17 and 18, which depend from Claim 15, recite that the "mapping database" is displayed graphically with "head right" and "head left" configurations: "17. . . .display screen is used to display the mapping database in a head right configuration" and "18. . . . display screen is used to display the mapping database in a head left configuration."  The use of a "mapping database" to perform "reconstructing" signifies that the output of "reconstructing" is a graphical representation of a route on a map.

The Court should reject Plaintiff's alternative proposal because it would encompass taking the "natural language description" of the route and simply

"building" a textual representation for display.  That interpretation would render "reconstructing" meaningless.  If a route could be displayed as text, then the "natural language description" itself could simply be displayed as text without any need for "reconstructing" it.  The patent, however, neither discloses nor suggests that routes are displayed as text.

The Court should therefore adopt Defendants' construction because it comports with the customary meaning of "reconstructing" as "rebuilding" and also because it is required by the claim language's and specification's repeated, consistent disclosures.

### D.   *"optimal route" / "optimal routes"*

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| *Plain and ordinary meaning.*<br>- or -<br>Alternative Construction:<br>*recommended route(s) based on one or more criteria* | *Indefinite* |

The term "optimal route(s)" is indefinite because the intrinsic evidence fails to inform one of ordinary skill when any "route" is "optimal."  Plaintiff proposes "plain and ordinary meaning" or, in the alternative, a construction of "recommended route(s) based on one or more criteria," which simply highlights the ambiguity in which "criteria" are used to define when a route is optimal.  Because the intrinsic evidence fails to identify the criteria for what constitutes an "optimal" route, Claim 15 is indefinite.

A claim is invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2 if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  The Federal Circuit has held claim terms indefinite when they depend "on the unpredictable vagaries of any one person's opinion."  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371

1  (Fed. Cir. 2014).  When evaluating definiteness, a court must determine whether the

2  term can be defined objectively in the context of the patent, not whether the term can

3  be assigned *some* definition.  *See Nautilus*, 134 S. Ct. at 2130 ("It cannot be sufficient

4  that a court can ascribe *some* meaning to a patent's claims . . ."); *see also Abdou v. Alphatee*

5  *Spine, Inc.,* No. 12-cv-1804 BEN, 2014 WL 6611422, at *9 (S.D. Cal. Nov. 19, 2014)

6  (stating that it "is not enough" for *some* meaning to be ascribed to the claims; "[t]he

7  new standard [for indefiniteness] mandates, at a minimum, clarity" (citing *Nautilus*)).

8      Claim 15 is indefinite because the claim language fails to inform one of ordinary

9  skill in the art, with reasonable certainty, about the scope of "optimal routes."

10 Although Claim 15 provides that "optimal routes" are calculated based on "real-time

11 information" and sent to the mobile navigation system for reconstruction and display;

12 the claim does not specify the criteria used to render a route "optimal."  Standing

13 alone, the term "optimal routes" is ambiguous and implies that some routes are

14 non-optimal.  A route could be "optimal" based on an unlimited number of criteria,

15 including, for example, distance traveled, travel time, amount of tolls, number of

16 highways, number of ATMs along the route, scenery viewable from the route, etc.

17 Because the claim language provides no guidance as to which if any criteria is used to

18 determine the "optimal" routes, any route may be considered "optimal" based on any

19 one (or more) of possibly hundreds of criteria.

20     The specification also fails to provide any criteria for determining the scope of

21 "optimal routes."  Like the claim language, the specification describes "optimal routes"

22 as calculated "based on real-time data available on the network."  '743 Patent at

23 Abstract; *see also id.* at 1:5-8, 5:26-32.  The specification describes that the real-time data

24 may include information such as "traffic, weather and road conditions and the like" or

25 that unidentified "user preferences" can be taken into account.  *Id.* at 1:38-41, 2:57-59.

26 Although these examples of data are descriptions of what the navigation server might

27 use in its calculation, they do not specify the criteria by which one of skill could

28 determine whether a route is "optimal."  Similarly, the specification describes prior art

1    systems calculating optimal routes using "sophisticated algorithms," but it provides no

2    disclosure of any such algorithms or the criteria to determine whether a route is

3    optimal as opposed to non-optimal.  *Id.* at 2:22-24.  Simply put, one of skill in the art is

4    given no basis for determining what constitutes "optimal route(s)" in Claim 15.

5    In other cases, courts have found claims reciting "optimal" and similar phrases

6    indefinite when the claim language and the specification fail to provide objective

7    boundaries.  In *Netgear, Inc. v. Ruckus Wireless, Inc.*, a court concluded that the term

8    "optimal conditions" was indefinite because the patent did "not allow one of skill in

9    the art to discern what the 'optimal conditions' are, which parameters would allow one

10    to achieve such conditions, or how to adjust said parameters."  5 F. Supp. 3d 592, 609-

11    10 (D. Del. 2013).  In *Sybase, Inc. v. Data Retrieval Technology, LLC*, the court determined

12    that the term "optimization" (of a database) was indefinite because the plaintiff's

13    proposed construction "fails to define any meaningful limitation."  No. C 08-5481-

14    VRW, Dkt. No. 146, at *9 (N.D. Cal. Nov. 8, 2010).  The court also noted that "if one

15    could identify a single characteristic of a database that is superior to that of the original

16    source, the database would be 'optimized' within the meaning of the claim."  *Id.*

17    Because any database could be considered optimized, the district court concluded that

18    the claim was indefinite:  "A competitor would have no way to know whether a

19    process for transforming a data source into a new database led to 'optimization' and

20    would be subject to an infringement suit if the patent holder could locate a single

21    characteristic of the database that is superior to that of the data source."  *Id.* at 10.

22    And in *Intellectual Venture I LLC v. AT&T Mobility LLC*, the court found that the term

23    "optimize," as used with respect to a user's "application IP QoS [(Quality of Service)]

24    requirements," rendered the claims indefinite because the specification indicated that

25    "QoS is subjective and that QoS can vary from user to user based on individual

26    preferences."  No. CV 13-1668-LPS, 2016 WL 4363485, at *10 (D. Del. Aug. 12,

27    2016).  "This subjective, user-based understanding would make it difficult, if not

28

impossible for a [person of ordinary skill in the art] to ascertain, with reasonable certainty, whether the claim limitation is satisfied by any particular embodiment." *Id.*

The Federal Circuit's decision in *Interval Licensing* is also instructive.  In that case, the Federal Circuit affirmed a final judgment of invalidity for indefiniteness because the claim phrase "in an unobtrusive manner that does not distract a user" was subjective and "on its face, provide[d] little guidance to one of skill in the art."  766 F.3d at 1371.  In its reasoning, the Court agreed that "whether something distracts a user from his primary interaction depends on the preferences of the particular user and the circumstances under which any single user interacts with the display."  *Id.*  The Court further found that neither the written description nor the prosecution history provided "a reasonably clear and exclusive definition, leaving the facially subjective claim language without an objective boundary."  *Id.* at 1372-73.

Similar to the claims in *Interval Licensing* and the other cases cited above, whether a route is optimal under the '743 patent depends on the subjective preferences of the navigation system user or the operator of the navigation server.  For example, with three users:  a first user may consider a route "optimal" based on the shortest distance; a second user may consider a route "optimal" based on lowest monetary cost (e.g., cost for gas/tolls); and a third user may consider a route "optimal" if it is the most scenic. The lack of clarity in Claim 15 leaves the public in the "zone of uncertainty"— not knowing what is claimed and what is still open.  *See Nautilus*, 134 S. Ct. at 2129 (explaining the need for precision and clear notice of what is claimed to avoid a "zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement [of] claims").

In addition to being indefinite because "optimal" lacks objective boundaries in the context of the '743 patent, the term "said optimal route" renders Claim 15 indefinite because it lacks antecedent basis.  "[A] claim could be indefinite if a term does not have proper antecedent basis where such basis not otherwise present by implication or the meaning is not reasonably ascertainable." *Halliburton Energy Servs.,*

1   *Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).  Claim 15 recites that the

2   navigation server calculates "optimal routes" (plural) and that these "optimal routes"

3   are formatted using a non-proprietary, natural language description.  Claim 15 then

4   recites that the mapping database reconstructs "said optimal route" (singular) and that

5   the "said optimal route" is displayed.  The change from "optimal routes" (plural) to

6   "said optimal route" (singular) renders Claim 15 indefinite because it is not clear which

7   route from the multiple "optimal routes" calculated at the navigation server is

8   reconstructed and displayed by the navigation system.  On similar facts in *Imperium (IP)*

9   *Holdings, Inc. v. Apple, Inc.*, the court rejected claims that recited "***a red pixel*** having an

10  output" and "a first analog-to-digital converter . . . for converting the output of ***the***

11  ***red pixels***," because the "sudden change" from the term "a red pixel" (singular) to the

12  term "the red pixel***s***" (plural) resulted in an antecedent basis problem rendering the

13  claims indefinite.  920 F. Supp. 2d 747, 751-52, 757-59 (E.D. Tex. 2013) (emphasis

14  added).  Similarly here, it is unclear what constitutes the "optimal routes" calculated by

15  a navigation server, and it is also unclear which of these multiple, uncertain routes is

16  reconstructed and displayed by the navigation system.

17          Plaintiff's proposal of plain and ordinary meaning should be rejected because it

18  does not resolve any of the uncertainty surrounding what constitutes "optimal

19  route(s)."  And Plaintiff's alternative proposal of "recommended route(s) based on one

20  or more criteria" only highlights the ambiguity by stating that the route is determined

21  based on "one or more criteria" — without any indication of what the "criteria" is or

22  should be.  In addition, the Plaintiff's alternative proposal of "recommended"

23  improperly broadens the claim's scope.  For example, a navigation server could

24  calculate several "recommended" routes based on a user's preference to avoid toll

25  roadways but not provide an "optimal" route, relative to travel time, if all of the

26  non-toll roadways have heavy traffic.  Because any guidance on what constitutes the

27  "criteria" for "optimal route(s)" is lacking in the intrinsic evidence and Plaintiff's

28  proposed constructions, the Court should find Claim 15 invalid for indefiniteness.

IV.     **<u>CONCLUSION</u>**

Because Defendants' proposed constructions provide the proper meaning of the disputed terms in the context of the claimed invention and are helpful to the lay jury, they should be adopted.

Dated:  April 7, 2017                     VINSON & ELKINS LLP

                                          By:  */s/ David J. Tsai*
                                               David J. Tsai (SBN 244479)
                                               (dtsai@velaw.com)
                                               VINSON & ELKINS LLP
                                               555 Mission Street, Suite 2000
                                               San Francisco, CA  94105
                                               Tel: (415) 979-6900
                                               Fax: (415) 651-8786
                                               *Attorneys for Defendants*
                                               HTC CORPORATION and
                                               HTC AMERICA, INC.

1

## **CERTIFICATE OF SERVICE**

2

3      The undersigned hereby certifies that a true and correct copy of the above and

4  foregoing document has been served on April 7, 2017, to all counsel of record who are

5  deemed to have consented to electronic service via the Court's CM/ECF system per

6  Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail,

7  facsimile and/or overnight delivery.

8                                        */s/ David J. Tsai*
                                        David J. Tsai
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

US 4976524v.1