Fred I. Williams (admitted *pro hac vice*)
  (fwilliams@velaw.com)
Mario Apreotesi (admitted *pro hac vice*)
  (mapreotesi@velaw.com)
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568
Tel: (512) 542-8400 / Fax: (512) 542-8612

Todd E. Landis (admitted *pro hac vice*)
  (tlandis@velaw.com)
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX  75201-2975
Tel: (214) 220-7700  / Fax: (214) 220-7716

David J. Tsai (SBN 244479)
  (dtsai@velaw.com)
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA  94105
Tel: (415) 979-6900 / Fax: (415) 651-8786

*Attorneys for Defendant*
HTC CORPORATION

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO

| | |
|---|---|
| INFOGATION CORP., <br><br>                Plaintiff, <br><br>     vs. <br><br> HTC CORPORATION and <br> HTC AMERICA, INC., <br>                Defendants. | **Case No.: 16-cv-01902-H-JLB** <br>            **17-cv-00646-H-JLB** <br><br> **DEFENDANT HTC AMERICA, INC.'S ANSWER AND COUNTERCLAIMS** <br><br> **DEMAND FOR JURY TRIAL** |

Defendant HTC America, Inc. ("HTC America" or "Defendant"), hereby files its Answer and Counterclaims to Plaintiff InfoGation Corp's ("InfoGation") First Amended Complaint filed April 14, 2017 (the "Complaint").

## NATURE OF ACTION

1.      HTC America admits that this case purports to be an action for patent infringement of U.S. Patent No. 9,528,843 ("the '843 patent").  HTC America admits that the face of the '843 patent names Qing Kent Pu and Hui Henry Li as inventors.  HTC America denies any remaining allegations of Paragraph 1.

## PARTIES

2.      HTC America is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore denies the same.

3.      The allegations of Paragraph 3 are not directed at HTC America and HTC America need not answer them.  HTC America therefore denies them.

4.      Admitted.

5.      HTC America admits that HTC America, Inc. is a subsidiary of HTC Corp. HTC America is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 5 and therefore denies them.

## JURISDICTION AND VENUE

6.      HTC America admits that the Complaint purports to state a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  HTC America admits that this Court has subject matter jurisdiction over patent law claims provided that the requirements of standing are satisfied.

7.      HTC America denies that venue is proper in this District as to HTC America.  HTC America further denies that this District is a convenient forum for this case and denies committing any acts of infringement.  HTC America denies the remaining allegations of Paragraph 7.

8.    HTC America admits that it has registered with the California Secretary of State to conduct business in California.  HTC America does not contest that, for purposes of this case only, that this Court has personal jurisdiction over HTC America.  HTC America need not answer the allegations of Paragraph 8 directed at HTC Corporation and therefore denies them.  HTC denies the remaining allegations of Paragraph 8.

### THE PATENT-IN-SUIT

9.    HTC America admits that the '843 patent appears to have issued on December 27, 2016; that the '843 patent is titled "Mobile Navigation System Operating With a Remote Server," and names Qing Kent Pu and Hui Henry Li as purported inventors; and that a copy of the '843 patent appears to be attached as Exhibit A.  HTC America denies any remaining allegations of Paragraph 9.

10.   HTC America is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 and therefore denies them.

11.   Denied.

### FACTUAL ALLEGATIONS

12.   HTC America admits that InfoGation and HTC America are adverse parties in a pending action in this Court.  HTC America admits that the '843 patent claims to be a continuation of U.S. Patent No. 6,292,743.  HTC America is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 12 and therefore denies them.

13.   HTC America is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 and therefore denies them.

14.   Denied.

15.   HTC America admits that each of the HTC 10, HTC Amaze, HTC Amaze 4G, HTC Aria, HTC ChaCha, HTC Desire, HTC DROID DNA, HTC Droid Incredible, HTC Evo, HTC Explorer, HTC First, HTC Google Nexus One, HTC Hero, HTC

1   Incredible, HTC Inspire, HTC Legend, HTC Merge, HTC One, HTC Primo, HTC

2   Rezound, HTC Rhyme, HTC Sensation, HTC Status, HTC ThunderBolt, HTC Vivid,

3   and HTC Wildfire utilizes a version of the Android operating system and can connect to

4   servers that provide data used as part of the Google Maps application.  HTC America

5   denies the remaining allegations of Paragraph 15.

6       16.   HTC America admits that each of the HTC 10, HTC Amaze, HTC Amaze

7   4G, HTC Aria, HTC ChaCha, HTC Desire, HTC DROID DNA, HTC Droid Incredible,

8   HTC Evo, HTC Explorer, HTC First, HTC Google Nexus One, HTC Hero, HTC

9   Incredible, HTC Inspire, HTC Legend, HTC Merge, HTC One, HTC Primo, HTC

10  Rezound, HTC Rhyme, HTC Sensation, HTC Status, HTC ThunderBolt, HTC Vivid,

11  and HTC Wildfire is capable of displaying the current location of the mobile device on an

12  electronic map. HTC America denies the remaining allegations of Paragraph 16.

13      17.   HTC America admits that each of the HTC 10, HTC Amaze, HTC Amaze

14  4G, HTC Aria, HTC ChaCha, HTC Desire, HTC DROID DNA, HTC Droid Incredible,

15  HTC Evo, HTC Explorer, HTC First, HTC Google Nexus One, HTC Hero, HTC

16  Incredible, HTC Inspire, HTC Legend, HTC Merge, HTC One, HTC Primo, HTC

17  Rezound, HTC Rhyme, HTC Sensation, HTC Status, HTC ThunderBolt, HTC Vivid,

18  and HTC Wildfire is capable of accepting an inquiry for a destination from a user.  HTC

19  America denies the remaining allegations of Paragraph 17.

20      18.   Denied.

21      19.   Denied.

22      20.   Denied

23      21.   Denied.

24      22.   Denied.

25      23.   HTC America admits that it does not have a license to the '843 patent.

26  HTC America denies the remaining allegations of Paragraph 23.

27

28

Defendant's Answer and Counterclaims          4          Case No. 16-cv-01902-H-JLB

## COUNT 1

## INFRINGEMENT OF U.S. PATENT NO. 9,528,843

24.     HTC America restates and incorporates by reference its answers to Paragraphs 1–23 of the Complaint.

25.     Denied.

26.     HTC America admits that it has had knowledge of the '843 patent since it was notified of the filing of InfoGation's Complaint in this action.  HTC America denies the remaining allegations of Paragraph 26.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

## PRAYER FOR RELIEF

This paragraph responds to the statement of relief requested by InfoGation, to which no response is required.  HTC America denies that InfoGation is entitled to any of the requested relief and denies all allegations of infringement.

## DEFENSES

Subject to the responses above, HTC America alleges and asserts the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition to the defenses described below, subject to their responses above, HTC America specifically reserves all rights to allege additional defenses that become known through the course of discovery.

## FIRST DEFENSE

### (Failure to State a Claim)

1.     Plaintiff fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

### (Non-Infringement)

2.      HTC America does not infringe and has not infringed any valid, enforceable claim of the '843 patent, either literally or under the doctrine of equivalents.

## THIRD DEFENSE

### (Invalidity)

3.      The claims of the '843 patent are invalid for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 100 et seq, including §§ 101, 102, 103, and 112.

## FOURTH DEFENSE

### (Limitation on Damages)

4.      Plaintiff is barred from recovering any pre-lawsuit claim for damages for failure to comply with 35 U.S.C. §§ 286, 287.

## FIFTH DEFENSE

### (Limitation on Costs)

5.      Plaintiff is barred from recovering any claim for costs according to 35 U.S.C. § 288.

## SIXTH DEFENSE

### (License and Exhaustion)

6.      To the extent that Plaintiff has licensed or otherwise exhausted its rights and remedies as to products or services that are accused, HTC America is not liable to Plaintiff for any alleged acts of infringement related to such products or services.

## SEVENTH DEFENSE

### (No Double Recovery)

7.      Plaintiff's requests for relief are barred or otherwise limited by restrictions on double recovery.

## EIGHTH DEFENSE

### (Standing)

8.     Because Plaintiff did not have sufficient rights in the '843 Patent at the time it filed suit, Plaintiff lacks standing to bring this infringement action.

## NINTH DEFENSE

### (Extraterritoriality)

9.     Plaintiff's claims for patent infringement are precluded in whole or in part to the extent that any accused functionality or acts are located or performed outside of the United States.

## TENTH DEFENSE

### (Waiver)

10.     Plaintiff's claims and requested relief are barred by the doctrine of waiver.

## ELEVENTH DEFENSE

### (No Exceptional Case)

11.     HTC America's actions in defending this case do not give rise to an exceptional case under 35 U.S.C. § 285.

## TWELFTH DEFENSE

### (No Equitable Relief)

12.     To the extent that Plaintiff establishes an entitlement to relief, Plaintiff has an adequate remedy at law and no basis exists for the grant of equitable relief.

## THIRTEENTH DEFENSE

### (Prosecution History Estoppel)

13.     By reason of prior art and/or statements and representations made to the United States Patent and Trademark Office during the prosecution of the application that led to the issuance of the '843 patent, the '843 patent is so limited that no claim can be construed as covering any HTC America product.

## FOURTEENTH DEFENSE

### (Improper Venue)

14.     Venue is improper in the Southern District of California.

## FIFTEENTH DEFENSE

### (Inequitable Conduct)

### A. Introduction and Summary of the '843 Patent Family

15.     On information and belief, the '843 patent is unenforceable due to inequitable conduct committed during prosecution of U.S. Patent No. 8,200,426 ("'426 patent"). The '843 patent is part of a chain of continuation applications (and their resulting patents) that includes the '426 patent. Ex. A ('426 patent) at front page. The following chart depicts the continuation chain family with the '426 and '843 patents bolded and underlined.

| U.S. Patent No. | Filing Date | Issue Date |
|---|---|---|
| 6,292,743 ("'743 patent") ↓ cont. | 1/6/1999 | 9/18/2001 |
| **8,200,426 ("'426 patent")** ↓ cont. | 8/22/2001 | 6/12/2012 |
| 8,600,664 ("'664 patent") ↓ cont. | 6/10/2012 | 12/3/2013 |
| 9,109,912("'912 patent") ↓ cont. | 12/2/2013 | 8/18/2015 |
| **9,528,843 ("'843 patent")** | 8/14/2015 | 12/27/2016 |

16.     The five issued patents referenced above have the same named inventors and share the same drawings and specification. As shown in the table above: the '843 patent is a continuation of and claims priority to the application that issued as the '912 patent; the '912 patent is a continuation of and claims priority to the application that issued as the '664 patent; the '664 patent is a continuation of and claims priority to the

application that issued as the '426 patent; the '426 patent is a continuation of and claims priority to the application that issued as the '743 patent.

17.     Two additional patent applications, U.S. application nos. 15/390,545 and 15/477,113, filed on December 26, 2016 and April 2, 2017 respectively, are currently pending before the U.S. Patent & Trademark Office ("USPTO").  These two applications are also part of the above patent family.

18.     The '743 patent is the first patent in the patent family and was filed on January 6, 1999.  The '743 patent is the subject of an earlier-filed action filed by Plaintiff against HTC America on July 27, 2016.  See No.: 3:16-cv-01902-H-JLB.

19.     For continuation patents, inequitable conduct committed during prosecution in any parent patent would also apply to render any child patent unenforceable.  E.g., *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366 (Fed. Cir. 2006); *Cordis Corp. v. Boston Sci. Corp.*, 188 F. App'x 984 (Fed. Cir. 2006).  Thus, the '843 Patent would be unenforceable due to inequitable conduct committed during prosecution of one of its parent patents, such as the '426 patent.

20.     On information and belief, one of the named co-inventors and the patent agent who prosecuted the application that issued as the '426 patent made false and/or misleading statements in a petition and declaration submitted to the USPTO with specific intent to deceive the USPTO.  The co-inventor and the patent agent were also aware of information material to the patentability of the '426 patent (and therefore the '843 patent), but they omitted and/or misrepresented that information to the USPTO with the specific intent to deceive the USPTO.

21.     Specifically, more than eight years after the '426 patent was abandoned at the USPTO, co-inventor Mr. Kent Pu and prosecution patent agent Mr. Joe Zheng both misrepresented and purposely omitted material information in a petition with an accompanying declaration to the USPTO certifying that that the '426 patent application was unintentionally abandoned.  But for these false and/or misleading statements to the

USPTO, the '426 patent and its child patents—including the '843 patent—would never have issued.

**B. Summary of Prosecution History of the '426 Patent**

22.     The '426 patent's application was filed on August 22, 2001, by Mr. Stephen C. Beuerle of the (now-defunct) law firm of Lyon & Lyon LLP.  Ex. B ('426 FH, 8/22/2001 Transmittal of New Application).  Mr. Beuerle and Lyon & Lyon LLP also took part in prosecuting the parent '743 patent.  On information and belief, Mr. Beuerle left Lyon & Lyon in 2001.

23.     On March 1, 2002, Mr. Beuerle, who was then employed at the law firm of Procopio, Cory, Hargreaves & Savitch LLP ("Procopio"), submitted to the USPTO a Revocation and Grant of Power of Attorney ("Procopio Power of Attorney") revoking all previous powers of attorney, including those agents/attorneys associated with his former firm Lyon & Lyon LLP, and granting himself and the agents/attorneys at Procopio with authority to prosecute and transact all business in the USPTO associated with both the '426 patent application and the issued '743 patent.  Ex. C ('426 FH, 3/1/2002 Power of Attorney).

24.     The Procopio Power of Attorney was signed by Mr. Pu on February 8, 2002 and identified Mr. Pu as the president of InfoGation Corporation.  The USPTO accepted the Procopio Power of Attorney on March 29, 2002.  Ex. D ('426 FH, 3/29/2002 Communication Re: Power of Attorney).

25.     After submitting the Procopio Power of Attorney, Mr. Beuerle and the Procopio law firm continued to prosecute the '426 patent application until its abandonment.

26.     On September 10, 2002, the USPTO issued a Restriction Requirement for the '426 patent application.  Mr. Beuerle and the Procopio firm submitted a Response on September 23, 2002.  Ex. E ('426 FH, 9/23/2002 Response to Restriction).

27.     On December 20, 2002, the USPTO issued a Non-Final Office Action rejecting all pending claims over the prior art.  Mr. Beuerle and the Procopio firm submitted a detailed Response to the Office Action with claim amendments and five new claims on February 10, 2003.  Ex. F ('426 FH, 2/10/2003 Response to Office Action).

28.     Following InfoGation's February 10, 2003 response, the USPTO issued a Final Office Action rejecting all pending claims of the '426 patent application on May 21, 2003.  The USPTO set forth a shortened statutory three month period for applicants to reply to the Final Office Action, which set the deadline for reply on August 21, 2003 (three months after the mailing of the Final Office Action).  Ex. G ('426 FH, 5/21/2003 Final Office Action).

29.     The Final Office Action was mailed to the Procopio firm at the same mailing address as indicated by Mr. Pu in the Procopio Power of Attorney and as used by Mr. Beuerle in his Response to Restriction.  Ex. G ('426 FH, 5/21/2003 Final Office Action); Ex. C ('426 FH, 3/1/2002 Power of Attorney); Ex. E ('426 FH, 9/23/2002 Response to Restriction).

30.     After receiving no reply from InfoGation or its agents for more than seven and a half months, the USPTO issued a Notice of Abandonment on January 8, 2004, and mailed it to the same Procopio firm mailing address.  Ex. H ('426 FH, 1/8/2004 Notice of Abandonment).

31.     On December 31, 2011, nearly eight years after the USPTO issued the Notice of Abandonment for the '426 patent application, Mr. Zheng submitted to the USPTO a Petition for Revival of An Application For Patent Abandoned Unintentionally Under 37 C.F.R. § 1.137(b) ("Revival Petition").  Ex. I ('426 FH, 12/31/2011 Revival Petition).  On information and belief, petitioner Mr. Zheng is a patent agent responsible for prosecuting patent applications on behalf of InfoGation.

32.     The Revival Petition submitted by petitioner Mr. Zheng was accompanied by a declaration titled "Statements of Supporting Petition under § 1.137" ("Revival

Declaration") made by Mr. Pu, listed then as the CEO of InfoGation Corporation. Ex. J ('426 FH, 12/31/2011 Revival Declaration). Mr. Pu certified that the statements in the Revival Declaration were true under 18 U.S.C. § 1001. *Id.*

33. Without requesting any further information from Mr. Zheng or Mr. Pu regarding the Revival Petition or the supporting Revival Declaration, the USPTO granted the Revival Petition under 37 C.F.R. § 1.137 on January 27, 2012. Ex. K ('426 FH, 1/27/2012 Petition Decision).

34. The USPTO later issued a Notice of Allowance on April 13, 2012. Ex. L ('426 FH, 4/13/2012 Notice of Allowance).

C. **Mr. Kent Pu's Inequitable Conduct**

35. On information and belief, Mr. Pu committed inequitable conduct based on statements and omissions he made in the Revival Declaration in support of the Revival Petition. Ex. J ('426 FH, 12/31/2011 Revival Declaration).

36. 37 C.F.R § 1.137 governs the revival of abandoned applications at the USPTO and requires that the abandonment be unintentional. *See* 37 C.F.R. § 1.137(a). A petition under 37 C.F.R. § 1.137 to revive an abandoned application must include: (1) a reply to the outstanding Office Action; (2) a petition fee; (3) a terminal disclaimer and associated fees if the application was filed before June 8, 1995; (4) a statement that the entire delay was unintentional. See 37 C.F.R. § 1.137(b).

37. The USPTO has explained that both "the delay in reply that originally resulted in abandonment" and "the delay in filing a grantable petition pursuant to 37 C.F.R. § 1.137 to revive the application" must be unintentional. Manuel of Patent Examining Procedure (M.P.E.P.) § 711.03(c).

38. In instances where a revival petition is not filed within one year of the date of abandonment of the application, the USPTO has explained that the applicant should include: "(A) the date that the applicant first became aware of the abandonment of the application; and (B) a showing as to how the delay in discovering the abandoned status of

the application occurred despite the exercise of due care or diligence on the part of the applicant." *Id.*

39.   Statements relevant to Mr. Pu's inequitable conduct are found in paragraphs 3 through 6 of his Revival Declaration.  Ex. J ('426 FH, 12/31/2011 Revival Declaration), reproduced below.

- ¶ 3.  The above-referenced application was filed on 08/22/2011, before the issue of Pat'743.  The law firm that represented both the above-referenced application and Pat'743 was Lyon and Lyon LLP that filed for bankruptcy and dissolved in 2002.

- ¶ 4.  Sometime in 2002, I read about the story of Lyon and Lyon in the news.  I informed Mr. Stephen C. Beuerle who filed the above-referenced application of my intention to find another law firm to continue the application and take care of other corporate matters.  I do not remember Mr. Stephen C. Beuerle was still at Lyon and Lyon or started to be with a new firm when I contacted him.

- ¶ 5.  Subsequently, I engaged Heller Ehrman [LLP] (now also bankrupted) as the company's legal counsel to take care of our patent cases and other corporate matters.  I am not sure that I forget to get Heller Ehrman connected with Mr. Stephen C. Beuerle or Heller Ehrman failed to get hold of Mr. Stephen C. Beuerle.  The case seemed to be left unattended in a transition between two firms.  In any case, I was not informed that there was a final Office Action dated 05/21/2003, neither I gave any instruction to anyone to abandon the above-referenced application.

- ¶ 6.  Recently, I asked someone to assemble a list of patents under my name and was surprised to learn that I had the above-referenced application but now abandoned for the failure of responding to the final Office Action dated 05/21/2003.  Mr. Joe Zheng (Reg. No.: 39,450) was immediately asked to track down the status and take actions or respond as needed.

40.   Mr. Pu's statements in the above paragraphs include several material misstatements and omissions, some examples of which are listed in paragraphs 41 to 62

below.  This listing is not exhaustive, and HTC reserves the right to identify additional misstatements and omissions as its investigation continues.

41.     First, Mr. Pu stated that after he learned of the banckruptcy of Lyon & Lyon in 2002, he informed Mr. Buehrle of his intention to find another law firm to handle the '426 patent application and that he did "not remember Mr. Stephen C. Beuerle was still at Lyon and Lyon or started to be with a new firm."  Ex. J ('426 FH, 12/31/2011 Revival Declaration) at ¶ 4.

42.     On information and belief, this is a false and/or misleading statement because on February 8, 2002, Mr. Pu signed the Procopio Power of Attorney authorizing Mr. Beuerle and his colleagues at the Procopio law to prosecute the '426 patent application.  Ex. C ('426 FH, 3/1/2002 Power of Attorney).  Mr. Pu made no mention of the Procopio law firm anywhere in his declaration.

43.     On information and belief, Mr. Pu intentionally made these false and/or misleading statements regarding his knowledge of Mr. Beuerle's employment history and interactions with Mr. Beuerle in order to deceive the USPTO into believing that the abandonment of the '426 patent application was unintentional.

44.     Second, Mr. Pu stated that "[s]ubsequently, I engaged Heller Ehrman (now also bankrupted) as the company's legal counsel to take care of our patent cases and other corporate matters" and that the '426 application "seemed to be left unattended in a transition between two firms."  Ex. J ('426 FH, 12/31/2011 Revival Declaration) at ¶ 5.

45.     On information and belief, this is a false and/or misleading statement because neither Heller Ehrman nor any of its attorneys or agents are identified in the file history of the '426 patent as authorized to prosecute the '426 patent's application, receive correspondences from the USPTO, or transact business with the USPTO.  Further, in his declaration, Mr. Pu did not identify the date when he engaged Heller Ehrman or whether the engagement included prosecution of the '426 patent application.

46.     On information and belief, Mr. Pu either did not engage Heller Ehrman to prosecute the '426 patent application or he only engaged Heller Ehrman to prosecute the '426 patent application only after that application was abandoned.

47.     On information and belief, Mr. Pu intentionally provided misleading statements and omitted material information regarding whether and when he engaged Heller Ehrman to work on the prosecution of the '426 patent application in order to deceive the USPTO into believing that the abandonment of the '426 patent application was unintentional.

48.     Third, Mr. Pu stated that he "was not informed that there was a final Office Action dated 05/21/2003." Ex. J ('426 FH, 12/31/2011 Revival Declaration) at ¶ 5.

49.     On information and belief, this is a false and/or misleading statement because by October 3, 2003 or shortly thereafter, Mr. Pu knew that there was a final Office Action.

50.     On October 3, 2003, Mr. Pu executed an assignment transferring rights to the '743 patent and its continuation applications from BSquare San Diego Corporation to InfoGation.  *See* Ex. M ('743 Assignment).  As of October 3, 2003, the '426 patent application was the only continuation application of the '743 patent.

51.     On information and belief, in executing the assignment as the CEO of BSquare San Diego Corporation, Mr. Pu knew of the existence of a final Office Action on October 3, 2003 or shortly thereafter because he was aware of the status of the patents and applications being assigned.

52.     On information and belief, Mr. Pu intentionally provided misleading statements and omitted material information regarding whether he knew about the final Office Action in the '426 patent application in order to deceive the USPTO into believing that the abandonment of the '426 patent application was unintentional.

53.     Fourth, Mr. Pu stated that "[r]ecently, I asked someone to assemble a list of patents under my name and was surprised to learn" that the '426 patent application was

abandoned." Ex. J ('426 FH, 12/31/2011 Revival Declaration) at ¶ 6.  He noted that "Mr. Joe Zheng [] was immediately asked to track down the status and take actions or respond as needed." *Id.*

54.     On information and belief, Mr. Pu's statements are false and/or misleading because by March 10, 2005 or shortly thereafter, he knew that the '426 patent application was abandoned.

55.     On March 10, 2005, Mr. Pu had retained Mr. Zheng for prosecution matters involving the '743 patent (the parent patent of the '426 patent application) as early as on March 10, 2005.  *See, e.g.*, Ex. N ('743 FH, 3/10/2005 Change of Address) (indicating change of address submission is associated with customer number 26797); Ex. I ('426 FH, 12/31/2011 Revival Petition) (indicating Joe Zheng is associated with customer number 26797).  As of March 10, 2005, the '426 patent application was the only continuation application of the '743 patent.

56.     On information and belief, on or before March 10, 2005, or shortly thereafter, Mr. Zheng knew about the status of the '426 Patent application, including its abandonment.

57.     On information and belief, on March 10, 2005, or shortly thereafter, Mr. Pu knew that the '426 patent application was abandoned because Mr. Zheng, acting as the representative for Mr. Pu, informed Mr. Pu of the status of the '743 patent and the '426 patent application, including that the '426 patent application was abandoned.

58.     Mr. Pu's statements are also vague and/or misleading because he failed to include in his declaration "the date that the applicant first became aware of the abandonment of the application" pursuant to M.P.E.P. § 711.03(c) because the Revival Declaration was not filed within one year but rather more than eight years after the abandonment date of the '426 patent application.

59.     On information and belief, Mr. Pu intentionally provided misleading statements and omitted material information regarding when he first found out that the

'426 patent application was abandoned and when he asked Mr. Zheng to take action in order to deceive the USPTO into believing that the abandonment of the '426 patent application was unintentional.

60.     Fifth, Mr. Pu failed to provide in his Revival Declaration any statement that the entire delay from the due date for the reply to the Final Office Action on August 21, 2003, to the filing of the Petition to Revival on December 31, 2011, was unintentional pursuant to 37 C.F.R. § 1.137(b).

61.     Specifically, because the Revival Declaration and accompanying Revival Petition was not filed within one year of but rather more than eight years after the abandonment date of the '426 patent application, Mr. Pu should have included "a showing as to how the delay in discovering the abandoned status of the application occurred despite the exercise of due care or diligence on the part of the applicant" pursuant to M.P.E.P. § 711.03(c).

62.     On information and belief, Mr. Pu intentionally omitted this information in order to deceive the USPTO into believing that the abandonment of the '426 application was unintentional.

### D.     Mr. Joe Zheng's Inequitable Conduct

63.     On information and belief, Mr. Joe Zheng committed inequitable conduct when he submitted the Revival Petition under 37 C.F.R. § 1.137 on December 31, 2011.

64.     Mr. Zheng's Revival Petition is on a standard USPTO petition form.  Ex. I ('426 FH, 12/31/2011 Revival Petition).  The Revival Petition is required under 37 C.F.R. § 1.137 and includes a statement that "[t]he entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 C.F.R. § 1.137(b) was unintentional."  *Id.*

65.     On information and belief, Mr. Zheng knew that this was a false and/or misleading statement.

66.     Mr. Zheng was retained for matters involving the '743 patent (the parent patent of the '426 patent application) as early as March 10, 2005.  *See, e.g.*, Ex. N ('743 FH, 3/10/2005 Change of Address) (indicating change of address submission is associated with customer number 26797); Ex. I ('426 FH, 12/31/2011 Revival Petition) (indicating Joe Zheng is associated with customer number 26797).  On March 10, 2005, the '426 patent application was the only continuation application of the '743 patent.

67.     On information and belief, on or before March 10, 2005, or shortly thereafter, Mr. Zheng knew that the '426 patent application was abandoned because in acting as the representative for Mr. Pu, Mr. Zheng checked the status of the '426 patent application.

68.     On information and belief, Mr. Zheng knew that the entire delay was not unintentional and purposely provided the false statement to deceive the USPTO into believing that the abandonment of the '426 patent application was unintentional.

69.     In view of the foregoing, the '843 patent is unenforceable due to inequitable conduct committed by one of the named inventors (Mr. Pu) and his patent agent (Mr. Zheng) who prepared or prosecuted the application of one of the '843 patent's parent patents, the '426 patent.

## RESERVATION OF RIGHTS PARAGRAPH

HTC America continues to investigate this matter and reserves the right to amend its Answer, add counterclaims and any additional defenses not presented herein, including, but not limited to those defenses revealed during discovery.

## COUNTERCLAIMS

HTC America, for its Counterclaims against InfoGation and upon information and belief, states as follows:

## THE PARTIES

1.     HTC Corporation is a Taiwanese corporation with its principal place of business at No. 23, Xinghua Road, Taoyuan District, Taoyuan City 330, Taiwan, Republic of China.

2.     According to its Complaint, InfoGation is a Delaware corporation with its principal place of business at 12250 El Camino Real, Suite 116, San Diego, California, 92130.

## JURISDICTION AND VENUE

3.     Subject to HTC America's affirmative defenses and denials, HTC America alleges that this Court has original jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1367, 1338(a), 2201 and 2202, and that venue for these Counterclaims is proper in this District.

4.     This Court has personal jurisdiction over Plaintiff.

## FACTUAL BACKGROUND

5.     In its complaint, Plaintiff purports to be the assignee and owner of U.S. Patent No. 9,528,843 ("the '843 patent").

6.     In its complaint, Plaintiff asserts that HTC America has infringed the '843 patent.

7.     HTC America does not and has not infringed, directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the '843 patent, either literally or under the doctrine of equivalents.

8.     The claims of the '843 patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more requirements of 35 U.S.C. §§ 100 et seq., including §§ 101, 102, 103, and 112.

9.     Consequently, there is an actual case or controversy between the parties over the non-infringement and invalidity of the '843 patent.

1

## **FIRST COUNT**

### **Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,528,843**

10.     HTC America restates and incorporates by reference its allegations in paragraphs 1 through 10 of its Counterclaims.

11.     An actual case or controversy exists between HTC America and Plaintiff as to whether the '843 patent is not infringed by HTC America.

12.     A judicial declaration is necessary and appropriate so that HTC America may ascertain its rights regarding the '843 patent.

13.     HTC America has not infringed and does not infringe, directly, or indirectly, any valid and enforceable claim of the '843 patent, either literally or under the doctrine of equivalents.

14.     This is an exceptional case under 35 U.S.C. § 285 including without limitation because Plaintiff filed its Complaint with knowledge of the facts stated in this Counterclaim.

### **SECOND COUNT**

### **Declaratory Judgment of Invalidity of U.S. Patent No. 9,528,843**

15.     HTC America restates and incorporates by reference its allegations in paragraphs 1 through 15 of its Counterclaims.

16.     An actual case or controversy exists between HTC America and Plaintiff as to whether the '843 patent is invalid.

17.     A judicial declaration is necessary and appropriate so that HTC America may ascertain its rights as to whether the '843 patent is invalid.

18.     The '843 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of the requirements of 35 U.S.C. §§ 100 et seq., including §§ 101, 102, 103, and 112.

19.     This is an exceptional case under 35 U.S.C. § 285 including without limitation because Plaintiff filed its Complaint with knowledge of the facts stated in this Counterclaim.

## REQUEST FOR RELIEF

WHEREFORE, HTC America prays for judgment as follows:

A.     A judgment dismissing Plaintiff's Complaint against HTC America with prejudice;

B.     A judgment in favor of HTC America on all of its Counterclaims;

C.     A declaration that HTC America has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid claim of the '843 patent;

D.     A declaration that the claims of the '843 patent are invalid;

E.     A declaration that this case is exceptional and an award to HTC America of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

F.     A judgment limiting or barring Plaintiff's ability to enforce the '843 patent in equity; and

G.     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, HTC America respectfully demands a jury trial of all issues triable to a jury in this action.

1

Dated:  July 19, 2017                    VINSON & ELKINS LLP

2

                                         By:  */s/ David J. Tsai*
3                                             David J. Tsai (SBN 244479)
                                              (dtsai@velaw.com)
4                                             VINSON & ELKINS LLP
                                              555 Mission Street, Suite 2000
5                                             San Francisco, CA  94105
                                              Tel: (415) 979-6900
6                                             Fax: (415) 651-8786
7                                         *Attorney for Defendant*
                                          HTC CORPORATION
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 19, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ David J. Tsai*
David J. Tsai